# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## BROWN V. FORD AND OTHERS.

January 11, 1917.

Absent, Prentis, J.*

1. TRUSTS.—*Jurisdiction—Liens.*—Where a court of equity in three chancery causes has taken the management and control of the whole corpus of a trust estate and in a fourth cause has taken jurisdiction to partition and distribute the realty and personalty of the estate, the court has unquestionable primary jurisdiction as a court of equity of a claim against one of the beneficiaries to the extent that such claim is an equitable lien on his interest in the estate under the control of the court.

2. TRUSTS.—*Creation of Equitable Lien.*—An executory agreement on the part of a beneficiary to make the whole corpus of a trust estate a security for a debt, operates to create an equitable lien on the beneficiary's interest in such estate. That the interest of the beneficiary is not vested but contingent is immaterial; when the contingent interest becomes vested the equitable lien attaches.

3. EQUITABLE LIENS.—*Creation.*—Every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described and identified, a security for a debt or other obligation, creates an equitable lien upon the property so indicated, which is enforceable against the property. Under like circumstances a mere verbal agreement may create a similar lien upon personal property. Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage, enforced upon the principle that equity will treat that as done which, by agreement, is to be done.

4. EQUITABLE LIENS.—*After-Acquired Property.*—An equitable lien upon property, to be acquired in the future, is valid and enforceable.

5. TRUSTS.—*Jurisdiction.*—A portion of a contingent interest of a beneficiary of a trust estate, upon his death before the death

* Submitted before Judge Prentis took his seat.
30

of the life tenant was by a compromise agreement vested in a claimant, charged by the agreement with the payment of the deceased contingent beneficiary's debts and liabilities. This agreement was embodied in a consent decree of a chancery court entered in suits pending for the settlement and division of the trust estate.

*Held:* That the chancery court had primary jurisdiction of the claim of appellant asserted in his position as a debt and liability of the deceased beneficiary against the fund under control of the court belonging to said claimant, charged with the payment of the debts and liabilities of the deceased beneficiary.

6.  EQUITY.—*Jurisdiction—Complete Relief.*—The jurisdiction of a court of equity, having once acquired jurisdiction of a cause on equitable grounds, to go on to grant complete relief, even to the extent of establishing legal rights and enforcing legal remedies, such as rendering personal decrees for money, damages for breach of contract, etc., is well settled. Accordingly, in the case at bar the court below, having jurisdiction of the case in the exercise of its primary jurisdiction as a court of chancery, should have gone on under the prayer of the petitioner for general relief to give appellant complete relief in accordance with his rights arising from the allegations of fact in his petition, even to the extent of enforcing all valid and subsisting legal demands.

7.  LIMITATION OF ACTIONS—*Equitable Liens.*—Where the contingent beneficiaries of a trust estate contracted to make such an estate a security for a debt, their personal liability does not arise until there is a failure to give a lien on the estate as promised. This they cannot do until their contingent interests become vested. Therefore, the statute of limitations does not begin to run until the vesting of such contingent interests.

8.  LACHES.—*Assertion of Equitable Lien.*—Where the beneficiaries of an estate had agreed to make the corpus of the estate a security for a claim, and it clearly appeared that delay in bringing the agreement with claimant to the attention of the court below was not the fault of the claimant, but of the parties who made the agreement with him, who expressly undertook, in effect, to bring the agreement to the attention of the court and obtain such action of the court as might be necessary to perfect the lien in favor of the claimant, the doctrine of laches does not apply.

9.  CONTRACTS.—*Joint or Several.*—An express contract of three of the beneficiaries of a trust estate to make the corpus of the estate a security for appellant's debt is a joint contract.

Appeal from the Chancery Court of Richmond. Decree for defendants. Petitioner appeals.

*Reversed.*

The opinion states the case.

*Scott & Buchanan,* for the appellant.

*A. B. Dickinson, Abner C. Goode* and *W. P. DeSaussure,* for the appellees.

SIMS, J., delivered the opinion of the court.

The decree of the chancery court complained of was entered on July 2, 1915, in four chancery causes pending therein of short styles (1) *Mary Lucy Ford, who sues &c.* v. *A. J. Ford et als.;* (2) *Stewart H. Ford et al.* v. *A. J. Ford, Trustee, et als.;* (3) *Estelle Madeline Ford, who sues, etc.* v. *Charles Thompson Herndon et als.,* and (4) *Mary Lee Benet* v. *Florence B. Quincey et als.,* on the petition of appellant, J. Henry Brown, filed therein on November 14, 1910; on two reports of Commissioner Sheild, one filed June 27, 1912, and the other July 10, 1914, and on the exceptions of Stewart H. Ford and said Herndon to the second of such reports. The material part of that decree was as follows:

"* * * the court being of opinion that the claim of J. Henry Brown asserted in his said petition and reported on in the two above referred to reports of Commissioner Sheild is without equity in the premises, the exception to the report, that the same is without equity, is sustained and it is adjudged, ordered and decreed that the said petition be and the same is dismissed, but without prejudice to the right of J. Henry Brown to assert the claim at law?" followed by a provision decreeing costs against the latter.

There are two assignments of error, namely, that the court below erred:—

"1. In entering the decree aforesaid, dismissing the petition of your petitioner on the above-mentioned exception to the commissioner's report.

"2. In not entering a decree overruling the exceptions thereto and directing payment of the amounts found to be due to your petitioner by the parties above mentioned and in default of their so doing directing their payment out of the funds in its charge."

The reports of Commissioner Sheild were made under the following decrees of reference entered in said four causes:

The first of such reports was made under decree of reference entered on February 1, 1912, the substance of which was as follows:

"It appearing to the court that the interest of Mary Lee Benet and Charles Thompson Herndon, in the Ford trust estate are encumbered of record, it is adjudged, ordered and decreed that these causes be referred to one of the commissioners in chancery of this court, who will as soon as possible report to the court the lien debts due by said Mary Lee Benet and Charles Thompson Herndon, or against their interests in the Ford trust estate, in order of their dignity and priority, respectively, and the parties primarily liable, together with any other matters deemed pertinent by the commissioner, or required to be specifically stated by the parties, or any of them. * * *"

The second of such reports was made under decree of reference entered on June 2, 1913, which so far as it related to the claim of appellant recommitted said first report with direction to further inquire and report:

"1. Whether the debt asserted by said J. Henry Brown in his petition filed herein is payable by any party to this cause, and if so, by whom and the amount so payable?"

"2. Whether the said claim or any part thereof is pay-

able out of any of the funds under the control of this court in this cause, and, if so, what?"

In his second report, which is a very able and exhaustive one and by which the court is greatly assisted in its consideration of this case, Commissioner Sheild reported, in effect, that appellant had an equitable lien on certain interests in or portions of the said "Ford trust estate," as follows:

Item 1. On the interests of Stewart H. Ford, Charles Thompson Herndon and Mrs. Mary Lee Benet in such estate for the amount of $1,283.50 under the first contract made with appellant hereinafter more particularly referred to.

Item 2. On the interests of Stewart H. Ford and Mrs. Benet in such estate for the amount of $1,004.00 under the second contract made with appellant hereinafter more particularly referred to.

Item 3. That as to the other items of his debt, amounting to $291.50, appellant had no lien on any portion of said estate, but that Stewart H. Ford and Mrs. Benet were personally liable to him therefor.

The exceptions to said report by Stewart H. Ford and Charles Thompson Herndon, above referred to, were as follows:

"1. That said commissioner erred in reporting that a court of equity has, or ever had, jurisdiction of the claim asserted by the petitioner, J. Henry Brown, and should have reported that a court of equity is without jurisdiction of said claim.

"2. Said commissioner erred in holding that the pleadings are broad enough to include a claim for personal liability against S. H. Ford, when he should have reported that a claim for such personal liability was not within the pleadings.

"3. Said commissioner erred in holding that there was or is any personal liability on either of the Ford children for

petitioner's claim, and should have reported that no such liability existed.

"4. Said commissioner erred in reporting that any personal liability now exists on said Stewart H. Ford, but should have reported that the liability against him, if any existed, has been fully discharged.

"5. Said commissioner erred in reporting that the claim asserted by the said petitioner was or is an equitable lien upon the interest of the Ford children, or any of them, and should have reported that said claim was not a lien upon the interests of any of them.

"6. Said commissioner erred in holding that the alleged promise of Stewart H. Ford to pay the debt of the Ford trust estate was not within the statute of parol agreements and erred in holding that the paper signed by Stewart H. Ford exhibited in evidence was a sufficient memorandum within the requirements of that statute, and should have reported that said alleged promise was within that statute and said paper was not sufficient to meet its requirements.

"7. Said commissioner erred in reporting that said contract set up by petitioner was an entire contract and should have reported that it was a several (severable) contract and that such portion thereof as was completed in 1903 was barred by the statute of limitations.

"8. That said commissioner erred in applying the payment made by Stewart H. Ford in part in the extinguishment of the alleged liability of Mary Lee Benet, when the whole of said payment should have been applied in the discharge of the alleged liability of said Stewart H. Ford.

"9. Said commissioner erred in making and reporting in the enforcement of a new and different contract from that made by the parties, when he should have reported that the rights of the parties and their liabilities was fixed by the contract as made."

There were two additional exceptions by Stewart H. Ford, in which Mrs. Benet did not join, which were as follows:

"10. Said commissioner erred in accepting the statement of the petitioner, positively denied by this exceptant, as to the assumption of personal liability for the whole debt, thus ignoring the required burden of proof, and should have reported that said alleged statement and assumption was not sustained by the proof.

"11. Said commissioner erred in holding S. H. Ford liable to the extent mentioned in said report, when he has already turned over to petitioner $1,200.00, and should have reported that said sum was a full discharge of his alleged liability."

The petition asserted a debt and an equitable lien as security for the payment of such debt against the corpus of "the Ford estate," to the amount of $2,559.00, principal, with interest thereon, for certain material furnished and work done by appellant in and about the Ford family section and A. J. Ford vault in Hollywood cemetery, under contracts or agreements therefor made at different times between appellant and certain of the Ford children entitled in remainder to the corpus of the said estate after the life estate of their mother, Mary Lucy Ford, therein, contingent upon their respectively surviving their said mother.

Of the allegations of this petition it is deemed sufficient to say that it sufficiently alleged in effect:

1. An express executory agreement made, before the material was furnished or work was commenced, contracted for thereby, in March, 1903, between appellant, on the one part, and Stewart H. Ford, B. W. Ford and Mrs. Mary Lee Benet, on the other part (three of the four Ford children who would be entitled to the whole *corpus* of said estate in the event they survived their said mother), to make the *corpus* of said estate a security for "Item 1," of $1,263.50, above

mentioned in connection with reference to Commissioner Sheild's second report.

The interests of the Ford children in said estate was then contingent, as aforesaid, and not vested.

2. An express executory agreement made, before the material was furnished or work was commenced contracted for thereby, in 1908, between appellant, on the one part, and Stewart H. Ford and Mrs. Benet, on the other part, (B. W. Ford having meanwhile died) to make the corpus of said estate a security for "Item 2" of $1,004.00, above mentioned.

The interests of one-fourth each of three of said Ford children, to-wit: Stewart H. Ford, Mrs. Benet and Mrs. Florence B. Quincey in said estate, being then vested, they having survived their said mother, who died in 1908 prior to this second contract with appellant—of the interest of one-fourth in said estate which would have belonged to B. W. Ford had he survived his mother, a portion was in 1910 vested in Charles Thompson Herndon under a compromise agreement by the terms of which the latter took such portion of such interest in the estate, by *his* "*consent*" and the consent of the other parties to such agreement, "*charged*" with the payment of "the debts and liabilities of" said B. W. Ford; and by like *consent* there was embodied in a decree of said chancery court, entered April 10, 1910, in the above-mentioned four causes, the following provisions, among others, to-wit: "and the court will hereafter by proper decrees make provision for the settlement with or satisfaction of any other creditors of B. Wellford Ford, deceased, if any there be, who shall establish a valid claim against the one-fourth interest in said trust estate involved in this clause of this decree" (being the interest which would have belonged to B. W. Ford had he survived his mother) "other than those specified in this decree out of the amount payable

to the said Charles Thompson Herndon under this clause of this decree."

3. Express executory agreement made, before the material was furnished or work commenced contracted for thereby, following the agreement last mentioned, between appellant on the one part and Stewart H. Ford and Mrs. Benet on the other part to make the *corpus* of said estate a security for "Item 3" of $291.50 above mentioned.

The petition further alleges that in consideration of and relying upon the aforesaid agreements appellant proceeded to and did furnish the material and do the work thus contracted for in accordance with such agreements. A bill or account rendered by appelant against the "Ford trust estate" covering all of said items was filed with the petition.

The prayer of the petition contains the following:

"* * * that petitioner may be paid the full amount of his bill with interest for work done and material furnished as herein shown; that an order may be entered herein establishing and fixing his said debt and interest as a debt and lien against the Ford trust estate and all the property involved and described in these causes * * * and that such other relief may be granted to petitioner as may be right and proper and as the nature of his case may require."

There was proper personal service of process to answer the petition upon Stewart H. Ford and said Herndon, and also upon the executor of Mrs. Florence B. Quincey and upon her son, Clarence E. Quincey, Jr. They did not demur, plead to or answer the petition. It was taken for confessed as to them.

The appellant, however, not relying upon this condition of the pleadings, introduced evidence before the commissioner; and there was rebuttal evidence introduced in behalf of said exceptants, Stewart H. Ford and said Herndon.

31

As to the allegations of the petition stated in paragraphs 1, 2 and 3 next above, however, there is no conflict in the evidence and such allegations are sustained by the proof, in addition to being taken for confessed as aforesaid. It is true that the testimony of appellant is not express that there was an agreement by Stewart H. Ford and Mrs. Benet to make the *corpus* of the said estate a security for "Item 3" of $291.50 above mentioned; but he testifies that this work was contracted to be done as additions to the work under contracts covering "Item 1" and "Item 2;" and his testimony stresses the fact that there were personal obligations in writing by Stewart H. Ford and Mrs. Benet for $200.00 of such $291.50 item; and Commissioner Sheild reported, as above stated, that there was no lien for such $291.50 item, but only the personal obligations of the two last-named parties therefor; the testimony of Stewart H. Ford, however, examined as a witness for appellant when he gave his first deposition, is to the effect that the allegations of the petition stated in paragraph 3, as well as in paragraphs 1 and 2 next above, are correct. He testified that he had gone over the entire account of appellant filed with the bill, that all the work was properly done, the charges therefor correct, and that appellant had been employed to furnish the material and do the work with the intention to make the Ford estate security and liable therefor. And it seems to us from the whole proof clear that all of the work done and material furnished by appellant was for "the Ford estate," and that there were express executory agreements by Stewart H. Ford, B. W. Ford and Mrs. Benet by the first contract, and Stewart H. Ford and Mrs. Benet by the subsequent contracts, to make the corpus of such estate a security for the payment of all of it, this being the primary intention of all the contracting parties.

The proof fails to sustain the allegations of the petition

that Mrs. Quincey authorized her interest in the Ford estate to be bound for any of debt to appellant.

The only contention of Stewart H. Ford in his depositions given in the case contrary to the claims of appellant is that the former denies ever having made any express promise to be personally bound for "Items 1" and "2" above referred to, of appellant's debt; claiming that his agreements were confined to the undertaking that appellant should have a lien on the Ford estate therefor. The petition, in addition to the allegations above summarized also contained the allegations of such express personal promise on the part of Stewart H. Ford, and also of Mrs. Benet and of B. W. Ford as to "Item 1" aforesaid; but reference thereto is left out of consideration, as is also the fact that appellant testifies that such personal promises were made, and the conflict thereby produced between the testimony of appellant and Stewart H. Ford on this point is also left out of consideration because, in the view we take of this case, hereinafter more particularly set forth, whether such express personal promise existed or not is immaterial.

It will be observed that appellant's petition was not filed in said causes until November 14, 1910, and the decree complained of was not entered until July 2, 1915, long after said contracts or agreements with appellant were made. It seems that prior to the entry of such decree, just as of what date the record does not show, and after the death of Mrs. Ford in 1908, as it would seem, although this does not clearly appear from the record, Mrs. Florence B. Quincey received and withdrew from said suits her entire one-fourth interest in said estate, and Mrs. Benet or her lien creditors did the same as to her one-fourth interest, thus leaving no part of their one-half of said estate under the control of the court upon which any lien in favor of appellant could be enforced. The evidence, however, is clear that the delay

in bringing the said agreements with appellant to the attention of the court below was not the fault of appellant but of the said parties who made such agreement with him, who expressly undertook, in effect, to bring those matters to the attention of the court and obtain such action of the court as might be necessary to perfect the lien in favor of appellant aforesaid agreed to be made as aforesaid. It is also clear from the evidence that if said parties had lived up to their agreements with appellant a lien would have been fixed and established on the whole corpus of said estate, certainly when the interests in remainder therein became vested on the death of Mrs. Ford in 1908.

It seems that there are funds still under the control of the court below belonging to Stewart H. Ford from his one-fourth interest in said estate, and to said Herndon, upon which such portion of any lien in favor of appellant as may be held as having attached thereto could be enforced and out of which any lien thereon created by any personal decree against the two latter parties may be enforced.

In this situation of the pleadings, proof and funds under the control of the court below, the following questions arise for our determination, which will be considered in the order stated below, with supplementary statements of fact shown by the record especially applicable thereto:

*First.* Did the court of equity below have jurisdiction of the claim of J. Henry Brown asserted by his said petition?

We are of opinion that such court did have such jurisdiction.

The court had, in the three chancery causes first above named, taken jurisdiction of the management and control of the whole corpus of said estate, and in the last named or fourth of such causes had taken jurisdiction to partition the real estate and distribute the personalty of "the Ford estate."

(a) As to Stewart H. Ford such court had unquestionable primary jurisdiction as a court of equity of the claim of appellant against him to the extent that such claim was an equitable lien on his interest in said estate under the control of the court. This position is not controverted by him or his counsel as we understand it.

The case of *Stevens* v. *McCormick*, 90 Va. 735, 19 S. E. 742, cited by counsel for exceptants, does not decide that in a partititon suit a lien creditor may not invoke the jurisdiction of a court of equity by petition therein (which the statute indeed then as now expressly provides may be done), but merely that it was not incumbent on the plaintiffs in a partition suit to make creditors parties.

The express executory agreement aforesaid on the part of Stewart H. Ford to make the whole corpus of the Ford estate a security for the whole debt to appellant operated to create and had the effect that it did create an equitable lien on his one-fourth interest in such estate.

As stated by 2 Pomeroy's Equity (2nd ed.) sec. 1235: "The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described and identified, security for a debt or other obligation * * * creates an equitable lien upon the property so indicated which is enforceable against the property * * * Under like circumstances a mere verbal agreement may create a similar lien upon personal property."

"Whatever the form of the contract may be, if it is intended thereby to create a security it is an equitable mortgage enforced upon the principle that equity will decree that as done which by agreement is agreed to be done." *Delaney* v. *Willis*, 95 Va. 608, 29 S. E. 324, 64 Am. St. Rep. 815.

The first contract or agreement with appellant was in writing, the second verbal, the third and fourth in part in writing, and the fifth in part in writing from Mrs. Benet and ratified verbally by Stewart H. Ford. However, no issue is made before us with respect to the Ford estate being real or personal estate, hence we may treat as immaterial, so far as the existence of an equitable lien is concerned, any question of whether the agreements mentioned were verbal or in writing.

That the interest of Stewart H. Ford was not vested, but contingent upon his surviving his mother when the first agreement with the appellant was made, is also immaterial. When the contingent interest became vested upon the death of his mother in 1908, the equitable lien attached thereto in favor of appellant.

As laid down in the same authority last above quoted (3 Pomeroy's Eq., 2d ed.), section 1291: "According to the general doctrine of equity established beyond any doubt by the highest authorities, the * * * equitable lien upon property to be acquired in the future is valid and enforceable * * *"

(b) As to Mrs. Benet and Mrs. Quincey, for the reasons stated above (the petition being taken for confessed as to them also) the appellant had at one time in accordance with the allegations of the petition an equitable lien on their one-half interest in said estate as security for his debt, which was lost by the failure of Stewart H. Ford, B. W. Ford and Mrs. Benet to comply with their first contract with appellant, and by the same breach of their second, third, fourth and fifth contracts with appellant by Stewart H. Ford and Mrs. Benet; so that the court had unquestionable primary jurisdiction as a court of equity of the claim of appellant against Mrs. Benet and Mrs. Quincey in so far as he asserted by his petition an equitable lien against their said interests in said estate.

(c) As to said Herndon, by his *consent*, as above stated, and in accordance with the decree of court of April 10, 1910, above referred to, the court below had, as a court of equity, unquestionable primary jurisdiction of the claim of appellant asserted in his petition as a debt and liability of B. W. Ford against the fund under the control of the court belonging to said Herndon "charged" with the payment of "the debts and liabilities" of B. W. Ford.

As it follows from what we have said that the decree complained of was erroneous and hence further decree will be necessary, we have to consider and pass upon the following further questions, in their order as stated below, namely:

*Second.* The court below having jurisdiction of the case in the exercise of its primary jurisdiction as a court of equity, should it have gone on under the prayer of said petition for general relief to give appellant complete relief in accordance with his rights arising from the allegations of fact in his petition, even to the extent of enforcing all valid and subsisting legal demands.

We think the court below should have given this complete relief.

The jurisdiction of a court of equity, having once acquired jurisdiction of a cause on equitable grounds, to go on to grant complete relief, even to the extent of establishing legal rights and enforcing legal remedies, such as rendering personal decrees for money, damages for breach of contract, etc., is well settled in Virginia by a long line of decisions. See *Chichester* v. *Vass,* 1 Munf. (15 Va.) 98, 4 Am. Dec. 531; *Grubb* v. *Starkey,* 90 Va. 831, 20 S. E. 784; *Beecher* v. *Lewis, &c.,* 84 Va. 630, 6 S. E. 367; *Walters* v. *Farmers* Bank, 76 Va. 12; *McArthur* v. *Chase,* 13 Gratt. (54 Va.) 680; *Stearnes* v. *Beckham,* 30 Gratt. (71 Va.) 379; *Johnston* v. *Bunn, &c.,* 108 Va. 490, 62 S. E. 341, 19 L. R. A. N. S. 1064; and other cases too numerous to cite.

The authorities cited by counsel for said exceptants on this point of *Linkous* v. *Stevens*, 116 Va. 898, 83 S. E. 417; Black on Judgments, pp. 907-8; *Newberry* v. *Dutton*, 114 Va. 102, 75 S. E. 785; *Green* v. *Spaulding*, 76 Va. 411; *Sweeney* v. *Foster*, 112 Va. 499, 503, 71 S. E. 548; *Spangler* v. *Ashwell*, 114 Va. 325, 328, 76 S. E. 281; and *Branham* v. *Artrip*, 115 Va. 314, 74 S. E. 390, are not in conflict with this rule and are not applicable to the case before us.

*Third.* Was the legal claim of appellant against Stewart H. Ford beyond the equitable lien on the interest of the latter in the Ford estate, a subsisting demand?

As to this counsel for exceptants take the position in their briefs that,—

(a) All of the said $1,263.50 portion of appellant's debt under the first contract is barred by the three or even five year bar of the statute of limitations, except $200.00 thereof, because $1,063.50 amount of such work was completed in 1903, more than five years before the institution of suit by said petition; exceptants claiming that after doing such $1,063.50 part of the first contract work appellant abandoned work under such contract and did not commence again until he was given the second contract.

(b) The whole of appellant's debt is barred by his laches in not sooner instituting his suit.

As to position (a):

The personal liability of Stewart H. Ford to appellant— and the same is true as to Mrs. Benet—and as to B. W. Ford to the extent of his undertaking under the first contract—did not arise until there was a failure to give a lien on the *corpus* of the Ford estate as promised. This could not have been done by the individuals who contracted to give it, by their personal action, until the contingent interests in remainder became vested, namely, until after the death of Mrs. Ford in 1908. Until then the perfection of the lien promised was within the discretion of the court. Afterwards it was within the power of the promisors, Stew-

art H. Ford and Mrs. Benet, and of said Herndon who took his share of B. W. Ford's interest *cum onere* as aforesaid without depending upon court approval to comply with said promise. Therefore the statute did not begin to run upon the completion of said portion of work, etc., done in 1903, but upon the failure to give the lien as promised, which did not occur until after the death of Mrs. Ford in 1908. See 25 Cyc., p. 1068, par. 4; 3 Page on Contracts, sec. 1656. This was less than three years before the petition was filed. Therefore, the statute of limitations bars no part of the appellant's debt—aside from any consideration of the fact that the contract for part of the work, etc., was in writing so that the five year statute of limitations applied, and apart from considering whether the contract of 1903 was an entire contract or was severable as to the items of work done, etc., under it.

As to position (b) :

As to the assertion of claim of said equitable lien: According to the uncontradicted evidence in the case the delay in presenting the claim of appellant to the court was not the fault of the latter but of Stewart H. Ford, Mrs. Benet and B. W. Ford, and said Herndon stands in the shoes of the latter with respect to this question, having taken what the latter did of the Ford estate *cum onere* as aforesaid.

As to the assertion by appellant of said legal liability to him; the right to assert such liability did not arise until the failure to give the promised lien on the Ford estate occurred, which was not until after the death of Mrs. Ford in 1908, as above stated.

Hence we do not think the doctrine of laches applies in the case before us or can be invoked against appellant by exceptants.

*Fourth.* Was the legal liability of B. W. Ford, Stewart H. Ford and Mrs. Benet joint or several?

As we have stated such liability arose from the express promises to make the entire corpus of the Ford estate a security for appellant's debt, and their breach of·such promise. This promise of B. W. Ford was confined to the debt which arose under the first contract. It was a contract along with Stewart H. Ford and Mrs. Benet of the one part with appellant of the other part to the extent of $1,263.50 of appellant's said debt and was clearly, we think, a joint contract.

The remaining promises of Stewart H. Ford and Mrs. Benet with respect to providing such security was clearly, we think, a joint contract and covered the remainder of appellant's debt of $1,004.00 under the 1908 contract, and $291.50 under the subsequent contracts.

*Fifth.* But one other matter remains to be noticed. On August 5, 1911, Stewart H. Ford paid to appellant the sum of twelve hundred dollars "as approximately one-third" of appellant's bill, "principal and interest," which Ford directed to be applied and which appellant in fact applied to the items of the bill or account of latter filed with his petition arising under the contracts subsequent to that of 1903. The result of this application of this payment is as follows:

1. $1,263.50 with interest thereon from December 1, 1908, until paid was left due and unpaid to appellant under said first contract by Stewart H. Ford, Mrs. Benet and C. T. Herndon, for one-third of which there is a lien on the interest belonging to Stewart H. Ford under the control of the said court below, a like lien for one-third thereof on the interest of C. T. Herndon in such fund belonging to him, and a joint personal obligation for the remainder upon Stewart H. Ford and Mrs. Mary Lee Benet, decree for which will create a further lien on said Stewart H. Ford fund under control of court, and to the benefit of such decree against Mrs. Benet the said Stewart H. Ford will be en-

titled to be subrogated if the lien thereof is enforced against such fund belonging to him.

2. $292.17 with interest thereon from August 5, 1911, until paid, was left due and unpaid to appellant under the other contracts aforesaid by Stewart H. Ford and Mrs. Benet, for one-half of which there is a lien on the interest belonging to Stewart H. Ford under the control of the said court below, and a joint personal obligation of the latter and Mrs. Benet for the remainder thereof, decree for which will create a further lien on said Stewart H. Ford fund under control of court, to the benefit of which decree he will be entitled to be subrogated against Mrs. Benet if the lien thereof is enforced against such fund belonging to him; and with right in said Stewart H. Ford, should he so desire and be so advised, to have a personal decree over against the said Mrs. Benet for one-half of said $1,200 paid as aforesaid by him, to-wit, for $600 with interest from August 5, 1911, until paid.

The foregoing statement under said *Fifth* heading of this opinion is worked out upon the assumption that no funds belonging to Mrs. Benet remain under the control of the court below. This seems to be the fact from the record, but it does not clearly appear. In view of the possibility of error in this matter in the condition of the record before us, this court will not enter in its decree any provisions for the payment of appellant's debt, but will remand the cause to the court below for further decree by it as presently to be stated.

For the foregoing reasons, the decree complained of must be reversed and set aside, and these causes will be remanded to the said court below for further decree therein to be entered not in conflict with this opinion.

*Reversed.*