# Richmond.

## E. C. MALARKEY v. J. G. BALLARD.

### November 15, 1923.

1. LIENS—*Equitable Liens—General Rule.*—Every express executory agreement in writing, where by the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described and identified, security for a debt or other obligation creates an equitable lien upon the property so indicated which is enforceable against the property. Under like circumstances a mere verbal agreement may create a similar lien upon personal property.

2. LIENS—*Equitable Liens—Creation of Lien—Case at Bar.*—In the instant case one B was adjudicated a bankrupt. His assets were sold and bought by complainant from the trustee in bankruptcy. Thereafter the chattels thus bought, consisting of machinery, lumber, materials, etc., were delivered by complainant to B and B agreed to pay complainant from the use and sale of the chattels the amount which they had cost complainant, plus a sum which B already owed complainant, and further agreed to replace all goods and chattels disposed of by him with goods and chattels of like quality and value; that the title was to remain in complainant until the indebtedness was fully paid, and that B was to furnish complainant from time to time with an itemized statement of the property sold. Defendant entered into a copartnership with B with full knowledge and notice of this agreement.

   *Held:* That complainant had an equitable lien upon the property which he could assert against defendant, who upon the death of B took over the assets of the partnership and assumed its liabilities.

3. BILL OF REVIEW—*Newly Discovered Evidence—Diligence.*—An applicant for a bill of review on the ground of after-discovered evidence, knew before he asked for a rehearing that the witnesses had knowledge of material facts and his only excuse for going to trial without producing them was that he did not know where they were, or what would be the character of their testimony, the applicant did not disclose in detail what efforts he made to locate these material witnesses during a period of nearly three years, but it appeared that after the adverse decree his efforts to locate the witnesses

were promptly successful.   The applicant had not asked for a con-
tinuance to secure these witnesses.

*Held:*   That this new evidence could not be held to be after-discovered
evidence.

Appeal from a decree of the Circuit Court of Augusta
county.  Decree for defendant.  Complainant appeals.

*Affirmed.*

The opinion states the case.

*Timberlake & Nelson*, for the appellant.

*R. C. Walker*, for the appellee.

PRENTIS, J., delivered the opinion of the court.

This is an appeal from a decree which dismissed a bill
of review by the appellant, Malarkey, against the ap-
pellee.    The antecedent facts which we regard as
material may be thus stated:

In 1916, one Carl Barckhoff, who operated an organ
factory at Basic City, Virginia, was adjudicated a bank-
rupt.    His assets, clearly indicated and described by an
inventory, were sold and bought by Ballard, the ap-
pellee, from the trustee.    Thereafter the chattels thus
bought, consisting of machinery, lumber, two horses,
buggy, materials, supplies and some finished musical in-
struments, itemized in such inventory, were delivered
by Ballard to Barckhoff, the bankrupt, with the under-
standing that he was to pay from the use and sale there-
of the amount which they had cost Ballard at the sale,
$2,275.00, plus about $1,400.00 which Barckhoff already
owed him; and that the title to the property should re-
main in Ballard.    Some small payments were made on
this debt when on April 4, 1917, there was a partnership

formed between Barckhoff and Malarkey. This co-
partnership took over the property referred to, and
Malarkey contributed the capital for the continued
prosecution of the business. During the existence of
this copartnership other payments were made on the
debt to Ballard, some of which were by the checks of the
copartnership and some by the personal checks of Mal-
arkey sent by him from his home in Pennsylvania to be
thus applied. The copartnership was dissolved Jan-
uary 31, 1919, shortly before Barckhoff's death, and
Malarkey then took its assets and assumed its liabili-
ties. He denied liability for the balance due Ballard on
this debt, and this litigation ensued.

Ballard filed his original bill against Malarkey, setting
up an equitable lien upon the personal property thus re-
ceived and appropriated first by Barckhoff and there-
after by the copartnership. This suit was instituted in
March, 1919. There was a decree of reference August
12, 1919, depositions were taken, and the commissioner
reported favorably as to Ballard's claim in November,
1921, and this was followed by a decree in his favor
against Malarkey January 21, 1922. Malarkey was the
only witness sworn in his behalf.

After that final decree, Malarkey filed his bill of re-
view relying chiefly upon after-discovered evidence. In
the meantime, execution of *fieri facias* upon the pecun-
iary judgment against him for Ballard's claim had
issued, been levied and Malarkey had executed a forth-
coming bond. Upon filing his bill of review the court
enjoined the prosecution of the motion for judgment
and execution under the forthcoming bond. Issue hav-
ing been joined on the bill of review, further testimony
was taken, and the decree under review which dissolved
the injunction and dismissed the bill was entered.

The first point urged is that the demurrer to the

original bill should have been sustained, because its allegations were insufficient to show that the complainant had a lien upon the property which could be enforced in equity. As to this we think it manifest that the court properly overruled the demurrer.

[1] The controlling principle is well stated in *Brown* v. *Ford*, 120 Va. 245, 91 S. E. 145, 149, where this language from 2 Pomeroy's Eq. (2d ed.), sec. 1235, is quoted with reference to such liens: "The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described and identified, security for a debt or other obligation * * * creates an equitable lien upon the property so indicated which is enforceable against the property * * *. Under like circumstances a mere verbal agreement may create a similar lien upon personal property."

This also is said in *Delaney* v. *Willis*, 95 Va. 608, 29 S. E. 324, 64 Am. St. Rep. 815: "Whatever the form of the contract may be, if it is intended thereby to create a security it is an equitable mortgage enforced upon the principle that equity will decree that as done which by agreement is agreed to be done."

As has been recently said by this court in *Armour Fertilizer Works* v. *Taylor*, 129 Va. 7, 105 S. E. 576: "In the nature of the subject, the authorities do not attempt other than general definitions of an equitable lien."

[2] The circumstances relied upon in the original bill are that Barckhoff agreed to discharge the debt out of the proceeds derived from the use and sale of the personal property delivered to him; to replace all goods and chattels disposed of by him with goods and chattels of like quality and value; that the title of the goods and

chattels so sold by Ballard to him and all property which replaced that originally sold or consumed was to remain in and be the property of Ballard until the indebtedness should be fully paid, and that Barckhoff was to furnish Ballard from time to time with an itemized statement of all of such property which was so sold or disposed of. The bill further alleged that Malarkey entered into the copartnership with full knowledge and notice of this agreement between Ballard and Barckhoff. These allegations, if proved, are in our judgment clearly sufficient to support the bill.

Upon the merits, we think it unnecessary to say more than that the evidence introduced by the complainant under the original bill justified the favorable report of the commissioner and the original decree in his favor.

The proposition now chiefly urged upon us in the briefs for the appellant is, that he is entitled to have the original decree reviewed and to a decree in his favor because of the after-discovered evidence, which it is maintained is amply sufficient to demonstrate the final error of the trial court in dismissing the bill of review.

As to this, we cannot express our own view better than to quote from and adopt the opinion of the learned judge of the trial court. He says:

"This cause was unhurriedly and without objection submitted to this court, which, upon a consideration of the record, reached said conclusion. Afterwards, a bill of review was filed on behalf of Malarkey wherein he asked for a rehearing on the grounds that one Brantley, who was present when the partnership was formed, and Mrs. Lena Barckhoff, widow of said Barckhoff, who was present when the partnership was dissolved, would testify that Malarkey had no knowledge of said lien, the language of said petition being in part as follows:

" 'Complainant further says that while he hoped and

believed that said R. A. Brantley and Lena Barckhoff had heard and would remember the facts to which they will now testify and above set out, he did not know this to be so until he was able to locate and communicate with them since the entry of said decree.'

"From this it appears that petitioner, when this cause was submitted, both 'hoped and believed' that these witnesses would testify to matters therein set out. It is, therefore, clear that this is not after-discovered evidence. In *Gordon* v. *Harvey*, 4 Call 450, the court said:

" 'If there was any real ground to believe that other testimony could have been procured, the plaintiff should have moved the district court for a continuance of the cause; and not have waited until a verdict was rendered against him, and then bring it forward as a ground for a new trial, after having taken his chance with the jury.'

"In a note to *Payton* v. *McQuown* (Ky.), 31 L. R. A. at p. 38, it is said:.

" 'And negligence in not obtaining a continuance in order to procure evidence will prevent an injunction against the judgment, *Ratliff* v. *Stretch*, 130 Ind. 282; *Naylor* v. *Phillips*, 2 Stew. & P. (Ala.) 58; *Canada* v. *Barksdale*, 84 Va. 742.'

"And this law is not affected by the fact that these witnesses might possibly prove unfriendly. In *Norfolk & Western R. R. Co.* v. *Draper*, 90 Va. 245, 17 S. E. 883, it is held:

" 'New trial on ground of newly discovered evidence will not be granted for evidence known before the trial, but omitted because the witnesses were believed to be hostile.'

"Had the diligence exercised since this cause was submitted been used before then, there would have been no occasion for a rehearing; and as to due diligence see *McClung* v. *Folkes*, 126 Va. 259, 101 S. E. 345."

[3] It appears that Malarkey knew that the persons whom he now relies on had knowledge of material facts, one having been present at the formation of the copartnership, the other at its dissolution.    His only excuses for going to trial without producing them as witnesses are, that he did not know where they were, or what would be the character of their testimony.    The precise efforts which he made to locate these material witnesses during the period, nearly three years, during which the suit was pending under the original bill, he does not disclose in detail.    His letters, however, which show his efforts to locate them after the adverse decree therein are filed and show that these belated efforts were promptly successful.    This new evidence, therefore, cannot be held to be after-discovered evidence, for that these were material witnesses has always been known, and all that is now relied upon is that he (Malarkey) did not know precisely where they were, and did not know certainly whose version of the transactions they would support.    This falls so far short of coming within the rule that it is unnecessary to do more than recite the facts and to repeat what was recently said in the case of *McClung* v. *Folkes, supra:* "The interests of society require that there be an end of litigation.    No maxim of the law is more firmly established.    For this reason, the rule has always been strictly adhered to that however material may be the newly discovered evidence, a new trial will not be granted on that account unless such evidence could not have been discovered by the exercise of reasonable diligence in time for use at the former trials."

In the last brief filed by the counsel for the appellee since the case was submitted, he calls attention to the fact that the printed record does not contain any bill of review setting up the alleged newly discovered evi-

dence.    This is true, but inasmuch as the case was presented both in the trial court and here upon the assumption that there was such a bill, we shall ignore its absence from the record.    We assume that it is missing by a mere inadvertence.    Reviewing here the same questions which were considered by the trial court, we reach the same conclusion.

*Affirmed.*