# Richmond

GEORGE S. HARNSBERGER, ADMR. ET ALS. v. PAUL R. WRIGHT.

October 14, 1946.

Record No. 3098.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*George S. Harnsberger* and *Greenlee D. Letcher,* for the appellants.

*Ward Swank,* for the appellee.

HOLT, C. J., delivered the opinion of the court.

In this cause the plaintiff, Paul R. Wright, is seeking to recover compensation for services rendered to Alice M. Wright, now dead.

This plaintiff was born on the 21st day of September, 1899, and became an orphan at nine years old, or in 1908. He was then taken into the home of his second cousin, Miss Alice Wright, and lived there until November 8, 1936, when he was married. He was never adopted. As a child, he did such services about the home and farm of his cousin as he was capable of performing, and as a man he continued to work upon it. There was no other male member of the household. From the date of his majority, September 21, 1920, to the date upon which such services ceased, November 8, 1936, he charges that his services were reasonably worth $40.00 a month, and that there is or was due him for such services $7,740.00. On this sum he tells us that he has been paid $2,183.09, and that there is a balance due him thereon of $5,556.91, with interest from November 8, 1936. He also claims an interest in wheat and barley sown in the fall of 1938, which was harvested in the early summer of the following year.

Alice M. Wright died on February 8, 1941. This suit was instituted on September 22, 1945.

If plaintiff's claim rests upon the principle of *quantum meruit*, it is barred by the statute of limitations. Code, section 5810. And it has not been revived by any promise in writing signed by the debtor. Code, section 5812. Miss Wright was not obliged to plead the statute; now that she is dead, her representative must. This claim might have been asserted in her lifetime and might have been a good claim.

The suggestion that she stood to him *in loco parentis* is without merit. He worked for this second cousin on the farm after he became of age and did full service there for more than sixteen years and has actually been paid on account $2,183.09.

His main contention is that he has an equitable lien against

this dead woman's estate. In this he is sustained by the opinion of the chancellor below.

"In the nature of the subject, the authorities do not attempt other than general definitions of an equitable lien." *Armour Fertilizer Works* v. *Taylor*, 129 Va. 1, 7, 105 S. E. 574, 576.

■ Moral obligations alone will not sustain them. 33 Am. Jur. 428.

■ Such a lien must rest upon a contract, express or implied. If that relied upon be for work done, it continued to be a debt. Miss Wright, as we have seen, at her election, could have defeated·it by a plea of the statute of limitations. Her representative has no election but must plead it. And so for services alone no such lien can arise. But it is said that the right to assert it has been expressly recognized by the debtor, and as evidence thereof this writing is vouched:

> "June 6 1926
> "Alice Wright    Mt Clinton Va
> This satment is writen buy
> my hand and it is as what I wont
> done with My Estate after my death
> first of all Dets shall be paid and
> also ever one that renders enny help
> in enny way I wont them two be
> paid And wont a nice Coffen & a
> good wood Box and have the
> Furnel at the house and I wont Paul
> Paid full wages for all work done that I
> have not Paid him for, and I wont
> sister Anna two have $10.00 ten dolors
> Monney and all of the reste of my
> Property Two Go Two the Memorel
> Hospile I name John Rolston for
> for the Man Two setle my
> Estate"

■ In *McElroy* v. *Rolston*, 184 Va. 77, 34 S. E. (2d) 241, we held that this unsigned memorandum was not a will. That

is to say, we held that when the intestate said "I wont Paul Paid full wages for all work done that I have not Paid him for," that unsigned statement manifested no settled purpose, it established no lien and constituted no waiver of the statute of limitations.

In *Seaton* v. *Seaton*, 184 Va. 180, 34 S. E. (2d) 236, it was held that you could predicate no right upon a provision in a will theretofore held to be void.

In *Brown* v. *Ford*, 120 Va. 233, 245, 91 S. E. 145, governing principles are thus stated:

"As stated by 2 Pomeroy's Equity (2nd Ed.) sec. 1235: 'The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described and identified, security for a debt or other obligation * * * created an equitable lien upon the property so indicated which is enforceable against the property * * * Under like circumstances a mere verbal agreement may create a similar lien upon personal property.'

" 'Whatever the form of contract may be, if it is intended thereby to create a security it is an equitable mortgage enforced upon the principle that equity will decree that as done which by agreement is agreed to be done.' *Dulaney* v. *Willis*, 95 Va. 606, 608, 29 S. E. 324, 64 Am. St. Rep. 815."

This we reaffirmed in *Harper* v. *Harper*, 159 Va. 210, 165 S. E. 490.

In Minor on Real Property, 2d Ed. 773, is this statement of the law:

" * * * wherever it appears by writing signed by the party to be charged, that for a valuable consideration, such as an existing debt, a debt at that time first contracted, or otherwise, he intends to charge his property as security for money, whatever the form of the instrument, the court of equity will fully effectuate the intentions of the parties concerned."

To the same effect is *Feely* v. *Bryan*, 55 W. Va. 586, 47 S. E. 307, and in *Knott* v. *Shepherdstown Mfg. Co.*, 30 W.

Va. 790, 5 S. E. 266, it was held that among other things necessary is "an express executorial agreement in writing."

■ Of course wills by statute in Virginia must be signed. To this rule there are certain exceptions immaterial here, such as nuncupative wills and wills in certain circumstances executed by soldiers or sailors.

Under ecclesiastical law a signature to a will was not necessary; and under common law title to land could not be passed by will at all. Both of these rules have long since been abandoned and provisions for them are everywhere adopted, governing the distribution of property, both real and personal.

It is not an arbitrary rule. Time has demonstrated its necessity. There is nothing mystical about a signature, but not until it is attached to a memorandum does that memorandum express the settled purpose of the testator. A history of its requirements and the necessity therefor will be found in the catalogue of cases cited by Judge Prentis in the cause of *Meany* v. *Priddy*, 127 Va. 84, 102 S. E. 470.

As we have seen, not until signed is there definite evidence of a settled purpose.

An unsigned memorandum, wholly in the handwriting of decedent, cannot be admitted to probate because it is unsigned and further because it is impossible to say that it represents a settled purpose. A paper writing signed by the testator but not attested by witnesses in the manner provided for by statute is also inadmissible to probate, not because there is any doubt as to the wishes of the testator but because of the absence of formal statutory requirements.

It is for this reason that these two papers are not entitled to the same weight in an attempt to establish an equitable lien.

In the instant case, we have a memorandum both unsigned and undelivered. We have said that it is not a will, not merely because a signature has not been affixed, but because without such signature it was not a will. Having reached that conclusion, it would be curious for us to hold that so far as the provision in issue is concerned, it is a will.

Another rule might by an unsigned memorandum permit one dying intestate to dispose of his entire estate.

The decree appealed from, so far as it undertakes to establish an equitable lien in favor of Paul Wright, is reversed, but other matters dealing with the administration of decedent's estate require further consideration. Therefore, this cause is reversed and remanded.

*Reversed and remanded.*