## Richmond

ALAN L. HOFFMAN v. THE FIRST NATIONAL BANK OF BOSTON, ET AL.

April 27, 1964.

Record No. 5741.

Present, Eggleston, C. J., and Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

*Robert R. MacMillan (E. Griffith Dodson, Jr.; Breeden, Howard & MacMillan; Dodson, Pence & Coulter*, on brief), for the appellant.

*Frank W. Rogers* and *John L. Walker, Jr. (Lyne, Woodworth & Evarts; Woods, Rogers, Muse & Walker,* on brief), for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This is an appeal by Alan L. Hoffman, a real estate broker, from a decree adjudicating that he was not entitled to a lien for brokerage commissions on the leasehold estate of Towers Shopping Center, Incorporated, in the city of Roanoke. He had asserted such right in a petition filed by him in a chancery cause pending in the Court of Law and Chancery of the City of Roanoke brought by The First National Bank of Boston against Towers Shopping Center, Inc., and others.

The bill of complaint in that suit alleged that the bank was the holder of first deeds of trust on the leasehold estate of Towers in lands leased to it by Times-World Corporation by lease which obligated Towers to construct a shopping center on the premises, with provision for financing the cost by mortgage thereon; and that the bank had made loans to Towers for that purpose, pursuant to a loan agreement, in the aggregate sum of $3,500,000, secured by deeds of trust on the leasehold, and under the provisions thereof the bank was entitled to have the trustees take over the leased premises and perform the obligations of Towers, as to which Towers was in default. The bill alleged that the bank was also entitled to have the trustees in the first deed of trust appointed receivers of the court so their action would be subject to the supervision of the court.

The bill accordingly prayed that said trustees be appointed receivers, that all present and potential lien creditors of Towers be convened and that the receivers continue operation of the affairs of Towers for a reasonable time to determine whether its financial problems might be solved. A decree was entered on February 1, 1962, appointing the receivers and assigning their duties.

On March 20, 1962, the receivers filed a petition stating that they had learned that there was pending in the Circuit Court of the City of Norfolk a chancery suit by Hoffman against Towers and Leo T. Zoby, as shown by court papers filed as an exhibit. The receivers prayed that Hoffman be enjoined from prosecuting that suit, and a decree granting the injunction was accordingly entered.

Thereupon Hoffman filed his petition in the present suit in the Roanoke court praying that the court declare Towers and Zoby obli-

gated to him for brokerage commissions and enter judgment therefor in the sum of $50,000, and that the court recognized his vendor's lien or impress upon the leasehold an equitable lien superior to all other liens.

The bank filed a demurrer to this petition and the receivers moved to strike out the paragraphs thereof which alleged that Hoffman was entitled to a vendor's lien or an equitable lien on the leasehold estate of Towers. By the decree appealed from the court held that the allegations of the petition were not sufficient to establish the lien claimed, and accordingly sustained the motion of the receivers and the demurrer of the bank, but ordered that the petition be treated as an unsecured claim against Towers and Zoby and be referred to the special commissioner previously appointed to hear the evidence and make report as to the disposition of Hoffman's claim. The assignments of error are to those rulings.

As the basis for his claim Hoffman's petition made the following allegations:

That by writing dated June 14, 1960, Towers contracted to sell to Joseph Durst the said leasehold, and Zoby joined therein and guaranteed performance; that Paragraph 24 of said contract of sale provides:

"Brokerage Commissions. The parties acknowledge that Alan L. Hoffman and Pearce, Mayer & Greer are the brokers who brought about this transaction and Seller agrees to pay the commissions of said brokers pursuant to separate agreement heretofore entered into between Seller and said brokers."

That simultaneously with the execution of said sales contract a real estate commissions contract was entered into by letter of June 14, 1960, addressed to Towers, signed by Pearce, Mayer & Greer and by Durst, and signed by Towers as "Agreed and accepted." This letter stated that pursuant to Paragraph 24 of the contract between Durst as purchaser and Towers as seller, the brokerage commission shall be $100,000, payable as follows: "$50,000 upon the closing of the transaction. $50,000 by an assignment of the purchase money mortgage called for under the contract." The letter then continues:

"It is understood and agreed that this commission shall be payable only when, as, and if title actually closes.

"It is understood between the parties that Pearce, Mayer & Greer of New York City and Alan L. Hoffman, trading as Hoffman Real Estate, are sharing the commission on a fifty-fifty basis.

"It is also understood that Joseph Durst is a member of the firm of Pearce, Mayer & Greer and is participating in the share to be received by Pearce, Mayer & Greer."

The bill further alleged that after the execution of the agreement of sale of June 14, 1960, and a further agreement amending it, dated November 15, 1960, "not material to the issues raised herein," Towers obtained a long-term mortgage financing for said project from Massachusetts Mutual Insurance Company in the sum of $2,100,000; and that Towers and Durst commenced construction of the shopping center which is over 80 percent complete;

That although Durst was ready, willing and able to perform his contract of purchase, Towers and Zoby did not perform but breached their contract, and Zoby wrote a letter to Durst dated February 13, 1961, stating that "we" were not able to obtain construction money and could not handle the shopping center project, and suggesting that he, Zoby, pay Durst only his "out of pocket expenses," which Durst rejected and wired Zoby that he intended to hold his company to complete performance; and on May 19, 1961, Durst instituted a chancery suit against Towers and Zoby in the Circuit Court of the City of Norfolk to require Towers and Zoby to perform the sales contracts of June 14, 1960, and November 15, 1960, or for an award of damages; but before a hearing of the suit Towers and Zoby, for the sum of $225,000, purchased back and canceled Durst's interest in said sales contract; that $100,000 of the $225,000 was paid by Towers to Durst on August 3, 1961, and $125,000 was evidenced by ten negotiable notes; and said suit was dismissed agreed on August 7, 1961;

That after Towers and Zoby breached their contract of sale with Durst, they entered into agreements with one Kanavas and said The First National Bank of Boston, by which the bank made loans in substantial sums to Towers, Zoby and Kanavas without securing same by mortgage on said shopping center, and to protect its "unsecured position" the bank "wrongfully colluded and conspired with Towers, Zoby and Kanavas and furnished the sum of $100,000 in cash paid to Joseph Durst as aforesaid to repurchase Durst's purchase contract for Towers Shopping Center;" and that the acts of the bank were done "with full knowledge of the right" of Hoffman "and in wrongful disregard thereof";

That as a result of the action of Towers, Zoby and the bank "in refusing to perform its sales contract" with Durst, and in acquiring

and canceling the contract of Durst to purchase the leasehold, Hoffman was deprived of his broker's commission of $50,000, which Towers and Zoby have refused to pay, although as part of the consideration paid to Durst for his sales contract, Towers and Zoby also acquired and canceled the brokerage contract between Towers and Pearce, Mayer & Greer as evidenced by a letter written by them to Towers and Zoby dated August 3, 1961, which stated:

"We hereby relinquish and release any and all of our rights to real estate brokerage commissions in connection with said contract of sale on the transaction relating thereto. Nothing herein contained is intended to affect the rights, if any, of Alan Hoffman, and/or of Hoffman Realty Company of Norfolk, Virginia to brokerage commission in respect of said Contract of Sale or the related transaction."

Whether Hoffman is entitled to a lien on the leasehold of Towers is to be determined from the facts so alleged in the above petition. The demurrer and motion to strike admit that all the material facts which are well pleaded therein are true, but do not admit the correctness of conclusions of law or inferences drawn from facts alleged. *Ames* v. *American Nat. Bank,* 163 Va. 1, 38, 176 S.E. 204, 216; *Koch* v. *Seventh Street Realty Corp.,* 205 Va. 65, 71, 135 S.E.2d 131, 135.

The subject of equitable liens has been dealt with in several cases in which this statement by Pomeroy (Pomeroy's Equity Jurisprudence, 5th ed., § 1235) has been approved:

"The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, * * creates an equitable lien upon the property so indicated which is enforceable against the property * * ." *Brown* v. *Ford,* 120 Va. 233, 245, 91 S.E. 145, 149; *Malarkey* v. *Ballard,* 137 Va. 631, 634, 120 S.E. 245, 246; *Kidwell* v. *Henderson,* 150 Va. 829, 837, 143 S.E. 336, 339; *Harper* v. *Harper,* 159 Va. 210, 218, 165 S.E. 490, 493; *Harnsberger* v. *Wright,* 185 Va. 586, 589, 39 S.E.2d 737, 738.

"Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage, and enforced upon the principle that equity will treat that as done which, by agree-

ment, is to be done." *Dulaney* v. *Willis*, 95 Va. 606, 608, 29 S.E. 324; *Harnsberger* v. *Wright, supra,* 185 Va. at 589, 39 S.E.2d at 739.

"'An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings. * * .' " *Noremac, Inc.* v. *Centre Hill Court,* 164 Va. 151, 162, 178 S.E. 877, 879-80, quoting from 1 Jones on Liens, 3d ed., § 27.

"But a broker is not entitled to have a lien for his compensation enforced against the land where there was no agreement for a lien or charge on the land for his benefit, and where, moreover, the contract did not have the effect of entitling the broker to a share of the purchase money as such." 12 Am.Jur.2d, Brokers, § 242 at p. 985.

"In the case of equitable liens it must appear that it was the intention of the parties that certain specified property should be set aside and appropriated as security for the payment of a particular debt, that such property had actually been set aside and appropriated for this particular purpose, and that it can be clearly identified as the property the parties had in mind at the time. * *." 12 Mich. Jur., Liens, § 6 at p. 160. *Penn Lumber Co.* v. *Wilson,* 26 F.2d 893; *Stickney* v. *General Electric Co.,* 44 F.2d 362.

Hoffman states in his brief that under our decisions it is essential to the existence of an equitable lien that there be a written contract evidencing the debt, and an intent to secure the debt "by a claim against certain property."

As to the first essential he contends that the letter of June 14, 1960, provides that his brokerage commission is to be secured by Towers and Zoby paying one-half of it upon the closing of the transaction "from the initial purchase money payment." The quoted words are not in the letter. The letter says that $50,000 shall be paid upon the closing of the transaction. It does not give the brokers an interest or share in the purchase money. It does not even say that the payment is to be made out of the purchase money. It was not a promise sufficient to create an equitable lien "nor operate as an equitable assignment." *Hicks* v. *Roanoke Brick Co.,* 94 Va. 741, 745, 27 S.E. 596, 598; 12 Am.Jur.2d, § 242, *supra.*

As to the second essential, Hoffman contends that the letter of June 14, 1960, provides that his commission was to be secured "by an assignment of the purchase money mortgage Durst contracted to

give Towers and Zoby under the contract." That contract (of sale) is not in the record. All that Hoffman's petition discloses about it is confined to quoting Paragraph 24 in reference to the broker's commissions and the statement in the letter of June 14, 1960, that $50,000 of the commissions shall be payable "by an assignment of the purchase money mortgage called for under the contract."

No disclosure is made in the petition as to the character of the purchase money mortgage called for in the contract. Nothing is shown as to its terms, as to its amount, as to time of maturity, as to its relation to the "long term mortgage financing for said project" in the sum of $2,100,000 referred to in the petition, or whether the assignment to be made was to be in satisfaction of the balance of the commissions or only security for its payment.

The facts alleged in the petition do not establish that it was intended by the parties that the whole leasehold property would stand as security for the payment of the broker's commissions, entitling Hoffman to a lien thereon ahead of all other liens and payable now, as claimed by him.

Such an intention is not to be found in the facts alleged in the petition, and it is obvious that it was not in the mind of Hoffman when he instituted the Norfolk suit above referred to. There he claimed no lien for commissions, but on the basis of allegations practically identical with those alleged in his petition in the present suit (except for the addition of the paragraph in the Roanoke petition which alleged that the bank made unsecured loans and furnished $100,000 to pay Durst for his contract) he asked that the court declare Towers and Zoby each to be obligated to him for brokerage commissions under the contracts of June 14, 1960, and November 19, 1960, and the letter of June 14, 1960, and that judgment be granted in his favor for $50,000 due him under said contracts. Moreover, if it had been intended that there should be a lien on the leasehold for the brokers' commissions, it is unlikely that so important a provision would have been omitted from the brokerage agreement.

The decree appealed from properly held that on the facts alleged Hoffman is not entitled to the lien claimed in his petition.

That being concluded, it is unnecessary to discuss the plaintiff's further contention that the bank had notice of his contractual right to a lien, further than to say that his petition does not establish that as a fact. The allegation of his petition that the acts of the bank "were done with full knowledge of the right [of Hoffman]

and in wrongful disregard thereof," is only a conclusion from facts pleaded, above set forth, and is not established by such facts. It is not reasonably to be inferred that the bank had knowledge from the facts alleged in the petition when those facts were not sufficient to give knowledge to Hoffman when he first asserted his claim. See 14 Mich. Jur., Notice, § 3, p. 4; *Great Atlantic, etc., Co.* v. *Cofer*, 129 Va. 640, 657, 106 S.E. 695, 700.

For the reasons stated the decree appealed from is

*Affirmed.*