# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Don Carlos Lee et al.

v.

Garrett Homes
of Virginia, L.C.

February 25, 2004

Case No. CH02-611

BY JUDGE WILLIAM H. LEDBETTER, JR.

This litigation involves the breach of a construction contract. The case has an unusual twist because the Lees conveyed their lot to their builder so that he could construct the house and then reconvey the property to them. Instead, apparently on the assumption that the Lees intended to renege, the builder made significant changes to the plans and sold the property to someone else.

The case was tried without a jury on January 28, 2004. Because of inclement weather and the lateness of the hour, the court asked counsel to present their closing arguments in writing. Those arguments have been submitted.

Based on the evidence presented, arguments of counsel, and the applicable legal principles, the court finds in favor of the Lees and awards judgment to them in the sum of $133,489.93 plus interest from October 2, 2002, and costs. Further, the court grants the equitable relief requested, finding that the property is impressed with a constructive trust and the Lees have an equitable lien on the property to the extent of $100,000.00.

The court will not repeat the facts. In summary, the essential facts are as follows.

Mr. and Mrs. Lee contracted with Garrett Homes on April 8, 2001, for construction of a house on Lot 555 in Fawn Lake Subdivision.[1] By the terms of the contract, the Lees would purchase Lot 555 from its owner, NTS, and convey it to Garrett Homes; the Lees would pay a deposit to Garrett Homes of $18,750.00 and pay a Fawn Lake processing fee of $14,739.93; Garrett Homes would build a specified house on the lot for an agreed sum and then reconvey the improved property to the Lees.

The Lees purchased the lot from NTS for $150,000.00 on May 30, 2001. They paid $100,000.00 cash and secured the balance with a deed of trust. They conveyed the lot to Garrett Homes pursuant to their construction agreement on July 27, 2001. Garrett Homes paid off the deed of trust, obtained a building permit, and began construction.

In November of 2001, Mr. Lee lost his job. In a meeting among the Lees, Garrett Homes officials, and real estate agents, the Lees explained their circumstances and asked for relief. They were told that none of their money would be returned to them and they would not be relieved of their obligations. On the other hand, they were told, everyone could explore "other options."

The Lees testified that they left that meeting feeling "obligated to the contract" but wanting to explore those other options, whatever they might be. They testified that they had no intention to renege or to breach the contract in any respect, and they neither did nor said anything to convey that impression.

In February of 2002, the Lees moved to Utah. Communications between the Lees and Garrett Homes were "spotty" for the next several weeks, but neither did or said anything to suggest a repudiation of their contract.

In May of 2002, the Lees learned that Garrett Homes was making a variety of significant changes to the plans and specifications.

When at long last, in July of 2002, the Lees were asked whether they intended to go to closing, they replied that they were not because the house had been materially altered from the original plans and specifications. They retained counsel and filed this suit as well as a lis pendens on August 12, 2002. Garrett Homes sold the property to a third party on October 2, 2002.

The applicable legal principles are well settled.

If a party to a contract breaches the contract, the other party has a remedy for compensatory damages. If the breach is material, the other party may terminate (or decline to perform) the contract. A material breach is the failure to do something that is so important or of such a substantial character

---

[1] The contract incorporated by reference many of the terms of an earlier contract between the parties, dated February 12, 2001.

as to defeat the purpose or object of the contract. See *Sternheimer v. Sternheimer*, 208 Va. 89, 155 S.E.2d 41 (1967); generally, 4A M.J., *Contracts*, § 73, et seq.

When Garrett Homes unilaterally altered the plans and specifications of the house in the spring and summer of 2002, it breached its contract with the Lees. The changes were material; they went to the essence of the project. Therefore, the breach was material. Then, of course, the sale of the property in October 2002 was an express repudiation of the contract.

The court is mindful that Garrett Homes did what it did because it assumed that the Lees would not go through with the contract. The court agrees that Garrett Homes accurately recites the contract principle known as anticipatory breach. An anticipatory breach occurs before the time for performance has arrived and is the outcome of words or acts that evince an intention to refuse performance in the future. To constitute an anticipatory breach, it must appear that the party has abandoned the contract or, by words and actions, has evinced an intent wholly inconsistent with performance of his obligations under the contract. See *Board of Supervisors v. Ecology One*, 219 Va. 29, 245 S.E.2d 425 (1978); generally, 4A M.J., *Contracts*, § 76.

The Lees neither did nor said anything to evince an intent not to perform when the time came for them to perform. In fact, quite the contrary. They said they wanted to look for "other options" with Garrett Homes and the realtors, but they acknowledged that they were "obligated by the contract." The fact that Mr. Lee lost his job did not of itself constitute an anticipatory breach. The Lees' move to Utah was not of itself an anticipatory breach.

Why would the Lees abandon the contract when they had $100,000.00 invested in the lot and $33,489.93 in the other payments associated with the project? Garrett Homes unwisely made an assumption that proved incorrect and acted on it to its detriment.

Although the Lees did nothing that constituted an anticipatory breach, Garrett Homes acted as if they had and took actions that materially breached, then repudiated, the contract.

The Lees are correct that no "prompt written notice of the breach" was necessary under the facts of this case. That contract provision refers to a breach for which the other party would want to terminate the contract. The Lees never sought to terminate the contract due to a default of Garrett Homes.[2] Instead, they declined to perform because of the breach by Garrett Homes. Further, the provision refers to a breach or default that could be

---

[2] They may have sought to "terminate" the contract at the November 2001 meeting when Mr. Lee lost his job, but, when their requests were rejected, they acknowledged their obligations and thereafter did nothing to suggest that they would not perform.

cured. The breach by Garrett Homes was not curable. A notice would have been futile. See *Bowles v. Richmond,* 147 Va. 720, 129 S.E. 489 (1926).

The equitable remedies are available to the Lees for the reason that a monetary judgment is inadequate. The property has been sold (subject to the recorded lis pendens) and Garrett Homes' business has been sold. A constructive trust is imposed upon property in situations such as this to prevent an injustice. See Costello, *Virginia Remedies* (1997) § 16-20(C). An equitable lien is likewise impressed upon property in situations such as this. See *Hoffman v. First National Bank,* 205 Va. 232, 135 S.E.2d 818 (1964).

To repeat, this case is not just a construction contract dispute. Although, as Garrett Homes argues, the land was treated as a non-cash deposit in the contract documents, the fact remains that the Lees conveyed their property to Garrett Homes with the express and specific understanding that Garrett Homes would build a house pursuant to the plans and specifications of the contract and then reconvey it to them. This gives rise to an equitable claim, at least in the amount of money that the Lees had invested in the lot, and occasions the imposition of a constructive trust on the property for a like amount.