JOHN VOGT, Respondent, v. L. A. CUNNINGHAM, Appellant.

Kansas City Court of Appeals, May 16, 1892.

Mortgages: EMBLEMENTS: SEVERED OR UNSEVERED: MATURITY.   Crops growing on mortgaged lands are covered by the mortgage, and, until they are severed, the mortgage attaches to the crops as well as to the lands; and if the land be sold for condition broken before severance the purchaser is entitled to the growing crops, not only as against the mortgagor, but against all persons claiming in any manner, through or under him, subsequent to the recording of the mortgage, and the question of their maturity or immaturity is immaterial.

*Appeal from the Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED.

THIS is an action in replevin for a lot of corn. Plaintiff Vogt claims it because he raised it.   Defendant Cunningham claims it because he bought it at a foreclosure sale of the land on which it was grown, and the corn was then standing in the stalk in the field. The corn was grown on the "Landon" farm, in St. Clair county.   Vogt leased this farm from Landon for one year, beginning March 1, 1890.   He went on the farm, and planted this crop of corn.   Defendant Cunningham held a trust deed against the Landon

farm for $2,200, dated January 1, 1887, and recorded in St. Clair county, Missouri, February 14, 1889. There was also a first mortgage for $400 on the farm, given in 1885 to the Wilson & Thomas Investment Company, both executed by Landon.

Cunningham's trust deed was in the usual form, with power of sale not only for default in payment of principal or interest, but also in case of failure of said first parties to "pay all taxes, general or special, and all liens, prior or subsequent." The first mortgage became due in September, 1890, and Cunningham was forced to take it up to prevent a foreclosure under it. He then declared his trust deed due, and directed the trustee named therein to sell, which was done. The taxes for 1889 were at that time delinquent.

The foreclosure sale was made on November 3, 1890, and the land was bought in by Martin, and by him deeded to Cunningham, who at once instituted a replevin suit for the corn, then standing unsevered from the soil, against one Myers, who was in possession of the farm under the plaintiff. Cunningham recovered judgment (no defense being made), and then gathered and shelled the corn, and took it to his home in Vernon county. Vogt then brought this suit. At the trial, the circuit court took the view that the turning point in the case was whether or not the corn was *mature* at the time of the sale under Cunningham's trust deed. This is apparent from the instruction given, while the defendant contended that the true test was, whether or not the corn was severed from the soil. It was not denied that the corn was mature at the time of foreclosure sale. Neither was it denied that it was standing in the field, unsevered from the soil. On a peremptory instruction for the plaintiff, the jury so found, and judgment was rendered for the plaintiff for

the assessed value of the corn, to-wit, $615.86, and therefrom defendant appealed.

*January & Lindley*, for appellant.

A sale of land carries with it, as part of the realty, all unsevered crops. *Tripp v. Hasceig*, 4 Am. Rep. 388; *Salmon v. Fewell*, 17 Mo. App. 118; Cobbey on Replevin, sec. 357, p. 183; 1 Jones on Mortgages [3 Ed.] secs. 696–698; 2 Jones on Mortgages [3 Ed.] sec. 1658; Boone on Mortgages [Pony Series] sec. 101, p. 136; *Hecht v. Dettman*, 41 Am. Rep. 134, and cases cited; Taylor on Landlord & Tenant [7 Ed.] sec. 537, p. 470.

*F. Childs* and *Burton & Wight*, for respondent.

As between the purchaser of land at a foreclosure sale, and a tenant of the mortgagor, the tenant is entitled to crops grown by him, which are mature at the time of such sale, although such crops are unsevered from the soil. *Hecht v. Dettman*, 56 Iowa, 679, and authorities cited; *Everingham v. Braden*, 58 Iowa, 133, 134; *Salmon v. Fewell*, 17 Mo. App. 118, 125–6; *Culverhouse v. Worts*, 32 Mo. App. 419; *Hayden v. Burkemper*, 40 Mo. App. 346.

GILL, J.—It will be seen from the foregoing statement of facts, that this is a controversy as to the ownership of a crop of corn grown on land that formerly belonged to Landon; that Cunningham claims as the purchaser under the foreclosure of a mortgage executed by Landon, while Vogt claims by reason of a lease to the land, executed also by Landon, but taken subsequent to the date of the mortgage. It is, and of course must be, admitted that Vogt's rights are all, and no more than would be Landon's, if he had retained

possession of the land and had this crop thereon at the foreclosure sale. So then the question for decision may be thus stated: Will a crop of corn, standing on the land, mature but not severed, pass with the sale and conveyance of the land, or does such crop continue the property of the grantor? After a careful investigation of the books, we must hold—along with the overwhelming weight of authority—that the annual crop in a case like this passes to the grantee; and this, too, regardless of its maturity or immaturity, *provided* only it had not been severed from the soil. Jones on Mortgages [4 Ed.] sec. 697, and cases cited; 1 Washburn on Real Property [5 Ed.] side p. 106; Cobbey on Replevin, sec. 357; 2 Blackstone's Commentaries, 122; 4 Kent's Commentaries, 156; *Tripp v. Hasceig*, 20 Mich. 254; 4 Am. Rep. 388; *Kittridge v. Woods*, 3 N. H. 503-507; *Rankin v. Kinzie*, 7 Bradw. (Ill. App. Ct.) 219; *Heavilon v. Heavilon*, 29 Ind. 512; *Shepard v. Philbrick*, 2 Denio (N. Y.) 175; *Beckman v. Sikes*, 35 Kan. 122, 123; *Culverhouse v. Worts*, 32 Mo. App. 420-427. These authorities make no distinction whether the crops be ripe or not yet mature. The test is, have they been severed—have they been cut loose from the soil? If so, then a conveyance of the land does not operate to carry the title of such emblements into a purchaser of the land; but, if still resting in the soil and ungathered, then they do pass to such purchaser. The rule is stated, "that crops growing on mortgaged land are covered by the mortgage, and until they are *severed* the mortgage attaches, as well to the crops as to the land; and if the land be sold for condition broken *before severance*, the purchaser is entitled to the growing crops, not only as against the mortgagor, but as against all persons claiming in any manner through or under him, subsequent to the recording of the mortgage." Cobbey on Replevin, sec. 357. So Washburn, after

stating the general rule, that such crops belong to the purchaser of the land, adds: "But a foreclosure *after the crops are severed* does not carry an interest in them to the mortgagee or purchaser." 1 Washburn on Real Property, 106. And in Jones on Mortgages, *supra*, it is said that, "the mortgagor, until foreclosure or possession taken by the mortgagee is entitled to emblements, and *when they are severed* has an absolute right to them without any liability to account for them. They are covered by the mortgage *until severance*, but belong to the mortgagor afterwards. And so with other textbooks and cases that might be cited. The right of the former owner or his tenant, as against the purchaser under the foreclosure sale, is made to depend on the fact as to whether or not the crops have been separated from the soil, and *not* upon any state of maturity. They do not declare the mortgagor or his tenant entitled to the crops, if they have, at the sale, *ripened* and are ready for the harvest; but that his title shall depend on the fact as to whether or not such crops have been *severed*, or separated from the land.

The case of *Tripp v. Hasceig, supra*, is precisely in point. The supreme court of Michigan there passed on this exact question in a parallel case, and held the true rule for determining the rights of the incoming and outgoing owner as above stated. It is there said that, "whether the crop of the seller of the farm goes with the land to the purchaser of the latter, when there is no reservation or exception, depends upon whether the crop is at the time attached to the soil, and not upon its condition as to maturity. And this seems to be the most natural and most practical rule. When parties are bargaining about land, the slightest observation will discover whether the crops are severed or not, and there will be no room for question or mistake as to whether they belong with the land or not. If, however, the crops

are to be considered as land or personal chattels, as they continue or do not continue to draw nourishment from the soil, the instances will be numerous in which very difficult inquiries will be requisite to settle the point."

Opposed to the foregoing, we have before us *Hecht v. Dittman,* 56 Iowa, 679, cited and relied on by plaintiff's counsel. By that case, Vogt's claim to the corn in question is supported. But, in view of the well-settled rule against it, we must decline to follow the evident bent of that decision. The learned judge who wrote that opinion seems to place the conclusion that the matter of *maturity* of the crop must control the question as to whether or not the corn shall pass along with the land, on the ground that when the crop matures it then becomes personal property, and thence on it must be regarded as a chattel and no part of the land. This reasoning is of no force, since, whether the crop is mature or immature, it is in nearly every instance regarded as personal property. As between landlord and tenant, as between debtor and creditor, and as between the personal representative and the heir—in all these cases such annual crops, as this corn, whether ripe or not, are regarded as personal chattels, and treated as such. It is incorrect then to say, that when the crop matures it ceases to belong to the land, and then becomes personal property. It was all the time personal chattels, but by the rule announced by the courts it is, until severed, appurtenant to the land, and belongs to its owner. If the land is sold and conveyed to another, these unsevered crops (personal property though they be) follow the title to the land.

So then we follow the rule announced by the Michigan court in preference to that from Iowa; because we consider it in harmony with the accepted doctrine everywhere, and because, too, as is said by

defendant's counsel, it is plain and simple, easy of application, certain and unvarying, and under it there is no room for controversy. Certainty is one of the first essentials of the law, even though it may sometimes work a hardship. The more definite and certain the rules of law are, the more they will be generally known and understood, and thereby fewer will be the number of sufferers from its enforcement.

On the admitted facts of this case, the judgment was for the wrong party; it will, therefore, be reversed. All concur.