# CASES DECIDED

IN THE

# Supreme Court of Appeals

## OF VIRGINIA

### Richmond.

ARMOUR FERTILIZER WORKS v. TAYLOR ET AL.

January 20, 1921.

1. APPEAL AND ERROR.—*Objection for the First Time on Appeal— Parties.*—In a creditors' suit counsel representing the trustee in bankruptcy of the debtor appeared at the taking of the depositions without objection, and the trustee was recognized as a defendant by the other parties, including appellant, and by the decree from which appeal was taken. But the record did not disclose, except by inference, that the debtor was ever adjudged a bankrupt, and the trustee was never made a party to the suit by any formal pleading or decree.

   *Held:* That as the appearance was voluntary on the part of the trustee, was without objection on the part of the appellant, it was too late upon appeal for either of the parties to make any objection to that procedure.

2. CROPS.—*Right to as Between Mortgagor and Mortgagee.*—Potato crops belong to the class of property known in law as *fructus industriales,* and not being ripe and ready for harvest on the day of the sale of the land under the mortgage are, as between mortgagor and mortgagee, a part of the realty.

3. CROPS.—*Right to as Between Mortgagee and Tenants of Mortgagor—Emblements.*—Where potato crops were planted by the tenants of the maker of a prior deed of trust, upon sale of the land under the deed of trust, the legal effect was the same as if the maker of the deed of trust had planted and owned the growing crops, because the foreclosure under the trust deed worked an eviction of the tenants by a paramount title, and a consequent termination *ab initio* of their leases. The doctrine of emblements does not apply to such a case.

4. CROPS.—*Right to as Between Mortgagee and Tenants of Mortgagor—Emblements.*—Where a mortgage antedates the planting of crops by the tenants of the mortgagor, upon sale of the

1

property under the mortgage, the mortgagee is entitled to the benefit of the entire purchase money, for the growing crops pass, supposing them planted after the mortgage, with the land for the benefit of the mortgagee, whether planted by the mortgagor or his tenants.

5. CREDITORS' SUITS.—*Surplus from Sale of Debtor's Lands—Contest Between Holder of Crop Lien and Debtor's Trustee in Bankruptcy—Case at Bar.*—Appellant, in the instant case, a creditors' suit, had furnished the tenants of the debtor fertilizer for which the tenants had given their notes, secured by crop liens duly executed in accordance with the provisions of the statute (Code 1904, section 2494, as amended by chapter 345, Acts 1910, p. 562). The debtor and his wife had in writing waived the landlord's lien. Upon the sale of the land under order of the court there remained, after paying the secured creditors, a surplus, and under the evidence it appeared that the proceeds of the sale were augmented by the value of the crops to an amount in excess of the crop liens. In other words, the surplus was to be regarded as having been produced by the crop liens.

   *Held:* That as between the appellant and the general creditors of the debtor, as represented by the debtor's trustee in bankruptcy, appellant was entitled in equity to the surplus.

6. EQUITABLE LIENS.—*General Doctrine.*—The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described and identified, security for a debt, or other obligation, creates a lien upon the property so indicated which is enforceable against the property.

Appeal from a decree of the Circuit Court of Accomac county in a creditors' suit. From the decree directing payment of surplus after sale of debtor's property to his trustee in bankruptcy, appellant appeals.

*Reversed.*

The opinion states the case.

*Mapp & Mapp,* for the appellant.

*S. James Turlington, N. B. Wescott,* and *L. Floyd Nock,* for the appellees.

KELLY, P., delivered the opinion of the court.

Omitting unimportant facts, the case in substance is this: John W. Taylor and wife owned certain valuable farm lands in Accomac county. These lands were heavily encumbered by sundry deeds of trust and judgments. To enforce these liens, and also to obtain on behalf of the trustees the aid and direction of a court of equity in the execution and administration of the trusts created by the trust deeds, a lien creditors' suit was instituted against Taylor and wife and other proper parties. Pending this suit two mechanics' liens for small amounts due for repairs to a dwelling house on the mortgaged premises were duly perfected, becoming effective prior to March 3, 1917. On the last named date the several tenants to whom Taylor and wife had leased the lands purchased large supplies of fertilizer from the Armour Fertilizer Works, the appellant here, for use in making crops of Irish and sweet potatoes on the lands for the year 1917. The tenants executed to the appellant their several notes for the respective amounts of their fertilizer purchases, and the same were secured by crop liens duly executed in accordance with the provisions of the statute, Code 1904, sec. 2494, as amended by chapter 345, Acts 1910, p. 562. This statute, so far as material here, is as follows: "If any person, other than a landlord, make advances, either in money or supplies, or other thing of value, to anyone who is engaged in, or is about to engage in, the cultivation of the soil, the person so making such advances shall be entitled to a lien on the crops which may be made or seeded during the year upon the land in or about the cultivation of which the advances so made have been, or were intended to be expended, to the extent of such advances."

Any conflict which might have arisen between these crop liens and the landlord lien on behalf of John W. Taylor

and wife was eliminated by a written waiver on the part of the latter.

On April 7, 1917, by consent of all persons who had up to that time become parties to the lien creditors' suit, a decree was entered directing a sale of the lands. The deeds of trust provided that in case of a sale thereunder possession should be given the purchaser on the day of sale. On that day the potato crops were well advanced and quite promising. The evidence shows that they contributed more than the total amount of the crop liens to the price realized by the sale. The purchase money was sufficient to discharge the deeds of trust and judgments, the costs and certain incidental expenses of the litigation up to that time, and left a balance of $1,419.92 in the hands of the trustees.

Subsequent to the decree of sale, the mechanics' liens and crop liens above mentioned were duly asserted by petitions filed in the cause. It seems to have been conceded by all parties concerned that the owners of the mechanics' liens, which with accumulated interest amounted to something more than $200, were entitled as junior lienors to payment in full out of the above mentioned surplus, and the court so ordered. This left in the hands of the trustees a net surplus of $1,207.24. The controversy before us is as to the proper application of the last named sum, and arises between the appellant, claiming under the crop liens, and the general creditors of John W. Taylor (now a bankrupt), claiming through his trustee in bankruptcy. The decree complained of awarded the fund to the trustee in bankruptcy, and from that decree this appeal was allowed.

[1] The first question for our decision is one of procedure. The record does not disclose, except by inference, that Taylor was ever adjudged a bankrupt, and his trustee was never made a party to the suit by any formal pleading or decree. It is suggested in the petition for appeal that the decree complained of was erroneous because the trustee

was not properly before the court, and, therefore, had no right to contest the appellant's claim to the surplus. There is no merit in this point. It was not made at all in the lower court, and we do not understand that it is very seri- · ously relied upon here by the appellant. Counsel representing the trustee in bankruptcy appeared at the taking of the depositions without objection, and he was recognized as a defendant by the other parties and by the decree from which this appeal was taken. The appearance was voluntary on his part, was without objection on the part of the appellant, and it is too late now for either of the parties to make any objection to that procedure.

[2] The remaining question is as to the disposition of the surplus of $1,207.24. Upon this question we think the decree is in error. Counsel have been unable to refer us to any authority directly in point, and we have found none; but the question seems easy of solution upon equitable principles.

[2-4] It clearly appears that the crop liens amount to many times more than the fund now in controversy; that the proceeds were augmented by the value of the crops as they stood at the time of the sale to an amount in excess of the crop liens; and further, that such value of the crops was due to the known and recognized effects of the fertilizer, which had been obtained upon the security afforded by the crop liens. In other words, the crop liens must be regarded as having produced the surplus. The crops belonged to the class of property known in law as *fructus industriales*, and, not being ripe and ready for harvest on the day of sale, they were, as between mortgagor and mortgagee, a part of the realty. 1 Min. Real Prop., sec. 43, and cases cited. The crops were not planted by the mortgagor, but, leaving out of view for the moment the crop liens and the land owner's assent thereto, the legal effect was the same as if the mortgagor had planted and owned the crops, because the fore-

closure under the trust deeds worked an eviction of the tenants by a paramount title, and a consequent termination *ab initio* of their leases. ʹThe doctrine ʹof emblements does not apply to such cases. 2 Min. Inst. (4th ed.) 106; 1 Min. Real Prop., sec. 50. The result, if no crop liens and no waiver of the landlord's rights were involved, might be that the proceeds of the land and growing crops derived from the foreclosure sale would be applied to the mortgage debts, and the surplus awarded to the land owner, upon the theory that the foreclosure abrogated the leases *ab initio.* At least there is some authority for this view. It seems to have been exactly so held in *Burr* v. *Stenson,* 43 N. Y. 462. We should be very slow to give our assent to any such doctrine, but we need not decide that question in this case. Kindred cases, involving the right and title of crop owners, have most frequently been those in which no surplus was left, the question being whether the mortgage debt took all the proceeds. In such cases if the mortgage antedated the planting of the crops, we have no fault to find with the holding which gives to the mortgagee the benefit of the entire purchase money; for, as stated by Mr. Minor (2 Min. Inst. 106), "the crops pass (supposing them planted after the mortgage) with the land for the benefit of the mortgagee, whether planted by the mortgagor or his tenant." This doctrine appears to us to be in accordance with reason, and it is certainly well supported by authority. But we have no such case here.

[5] Conceding merely for the purposes of this discussion that a foreclosure of the deeds of trust so effectually terminated the estate of the lessees in their original leases as that the crop lienors did not stand, like the owners of the mechanics' liens, in the attitude of holders of junior liens on the real estate, we have no hesitancy in deciding, upon the facts of this case, as above detailed, that the appellant is entitled in equity to the fund in litigation. That fund is undoubt-

edly in existence now as the direct result of the sale of the fertilizer to the tenants of John W. Taylor and wife. These tenants and their landlord agreed, if not in terms, certainly in substance and effect, and in equity and conscience, for that fund to go to the vendor of the fertilizer. The trial court held that the surplus belonged to Taylor's creditors but the effect of that holding was to place such creditors on higher ground than Taylor at any time occupied. Whether there was an express or implied covenant by Taylor and wife for the quiet possession of their tenants does not appear; but that question is immaterial, because they waived their claim to the proceeds of the crops for the express purpose of enabling the tenants to create a lien in favor of the appellant, and thus secure credit for the fertilizer. Under these circumstances the appellant must in equity be given the benefit of his lien.

[6] In the nature of the subject, the authorities do not attempt other than general definitions of an equitable lien. For example, the text in 19 Am. & Eng. Ency. L. (2nd ed.), p. 12, after stating the doctrine in general terms, pertinently adds: "This is not very definite, but, as has been said by a distinguished English jurist, 'the words equitable lien are intensely undefined.'" In *Dulaney* v. *Willis,* 95 Va. 608, 29 S. E. 324, 64 Am. St. Rep., 815, the court said: "Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage enforced upon the principle that equity will decree that as done which by agreement is agreed to be done." In *Brown* v. *Ford,* 120 Va. 233, 245, 91 S. E. 145, 149, this court, quoting with approval from 2 Pom. Eq. (2d ed.), sec. 1235, said: "The doctrine may be stated in its most general form that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described and identified, security for a debt, or other obli-

gation * * * creates a lien upon the property so indicated which is enforceable against the property."

The case before us falls within the influence of the general principles recognized in the foregoing authorities.

The decree complained of will be reversed, and this court will direct that the trustee in bankruptcy of John W. Taylor (to whom the fund in controversy has already been paid) shall pay the same over to the appellant.

*Reversed.*