# Richmond.

## McCormick v. Terry, et al.

### March 17, 1927.

1. Loans—*Promise that Loan would be Extended—Burden of Proof to Show Promise.*—A borrower, a landowner, asserted that when a loan was negotiated, the lender told him that the loan could be renewed, and that he could go ahead and make a crop and harvest it, and that he would not be disturbed. But the lender testified that he distinctly told the borrower that the loan could not be extended, but would have to be paid at maturity, and that he did not tell him that he could go ahead and raise a crop and that he would not be disturbed. Circumstances connected with the transaction tended to support the lender's testimony.

    *Held:* That the burden of proof was on the borrower to show the agreement and that he had failed to sustain the burden.

2. Judicial Sales—*Crops—Lien for Advances by Another than the Landlord—Priority of Recorded Deeds of Trust—Case at Bar.*—The instant case was a suit by a party claiming a crop lien against the purchaser of the land at a judicial sale to enjoin him from collecting rents on the land which accrued after his purchase and after he had obtained the deed and entered into possession. The landowner was to furnish one-fourth of the fertilizer and was to receive one-fourth of the crops. It appeared that he had not furnished the tenants on the land in controversy anything in excess of one-fourth of the fertilizer, and hence could not give complainant a lien for any greater amount than on the one-fourth of the crop coming to him. This the purchaser offered to pay. Complainant claimed a lien on one-fourth of all the crops raised on the entire tract owned by the landowner for the total advances made to the landowner and regardless of the amount advanced to the tenants severally and of the fact that complainant purchased part of the land on which some of the tenants raised crops.

    *Held:* That the grant of an injunction under these circumstances was error.

3. Crops—*Lien on One other than Landlord Making Advances—Priority of Prior Recorded Deeds of Trust—Sections 6452, 6454, 6455 of the Code of 1919.*—Section 6452 of the Code of 1919, giving a lien on crops for advances made by persons other than the landlord, must be read in connection with sections 6454 and 6455 of the Code of 1919. Reading

the three sections together it appears that the lien given by section 6452 of the Code of 1919, for advances made by one other than the landlord, is subordinate to prior deeds of trust which have been duly recorded, in the absence of agreement to the contrary between the mortgagee and the party making the advances.

4. Mortgages and Deeds of Trust—*Foreclosure—Crops—Right of Mortgagee to Crops as against Tenant.*—If the owner of the fee mortgages the land, and afterwards leases it to a tenant who plants crops, if the mortgage is foreclosed before harvest, the mortgagee's title is superior to that of the tenant (supposing the mortgage to have been recorded, or the tenant to have had notice thereof), and the tenant cannot claim emblements as against the mortgagee unless he has planted with the mortgagee's consent. The crops pass with the land to the mortgagee, whether planted by the mortgagor or his tenant.

5. Mortgages and Deeds of Trust—*Purchaser at Sale Announcing that he would Respect Rights of Tenants—Case at Bar.*—A purchaser at a mortgage sale announced that the rights of the tenants would be respected and that the purchaser would receive one-fourth of the crops and the rents and pay one-fourth of the fertilizer furnished the tenants in accordance with the agreement between the tenants and their landlord.

   *Held:* That the purchaser was entitled to one-fourth of the crops raised on the lands purchased by him, and was liable for one-fourth of the price of the fertilizer furnished to the tenants of the tract.

6. Mortgages and Deeds of Trust—*Liens—Transfer of Liens upon the Lands to the Purchase Money.*—Where land was sold under deed of trust, not subject to liens, but free of liens, whatever liens existed against the land were transferred from the land to the purchase money.

Appeal from the decree of the Circuit Court of Pittsylvania county. Decree for complainants. Defendant appeals.

*Reversed and remanded.*

The opinion states the case.

*W. G. Vansant,* for the appellant.

*R. I. Overbey,* for the appellees.

Burks, J., delivered the opinion of the court.

This was a suit by a party claiming a crop lien against the purchaser of land at a judicial sale, to injoin him from collecting rents on the land which accrued after his purchase and after he had obtained a deed and entered into possession. The testimony was in some respects conflicting, and the extracts from the record of the suit in which the sale was made were not as full as could be desired, but the two together are sufficient to disclose the merits of the controversy. The trial court decided the controversy in favor of the crop lienor, and perpetuated the injunction.

There are nine assignments of error, but the correctness of the decision of the trial court on the merits of the controversy is the only one that need be considered.

[1] In 1921, a lien creditor's bill was filed against D. C. Allen to subject his lands, containing 528 acres, to the payment of the liens. The case was referred to a master to take an account of the liens and their priorities, and he reported liens amounting to $24,000. Of these the first $18,000 were secured by deeds of trust, most of the others were evidenced by judgments. Only one of these deeds of trust is copied in the present record, and that provides for a sale for cash in case of default in the payment of the principal or any instalment of interest thereon. At the November term of the court, 1923, the report of liens was confirmed, and C. O. McCormick, the appellant, was appointed a commissioner to sell the lands of D. C. Allen. The terms of sale were cash as to 327 acres, which are supposed to have been covered by deeds of trust, and one-fourth cash and credits of six, twelve and eighteen months of the residue as to the remainder of the lands. Shortly after the entry of this decree McCormick, as counsel for D. C. Allen, negotiated a loan of $6,000 for

him on five months time.   Allen says that McCormick told him that loan could be renewed, and that he could go ahead and make and harvest a crop and would not be disturbed; but McCormick, who was counsel for Allen at that time, testifies that he distinctly told him that it could not be extended, but would have to be paid at maturity, and that he did not tell him that he could go ahead and raise a crop and would not be disturbed.   Circumstances connected with the transaction tend to support McCormick's testimony.   At all events, the burden was on Allen to show the agreement, and he has failed to sustain the burden.   The loan matured May 8, 1924, and nine days before that time McCormick wrote Allen notifying him of the maturity of the loan and that he would be expected to pay it.   The loan was not paid.   McCormick, acting for Allen, then got the creditors to agree to change the terms of sale as to the 327 acres from all cash to one-fourth cash, and the balance on deferred instalments, and at the May term of the court, 1924, a decree was entered changing the terms of sale as indicated.   Thereafter 190 acres of the land were surveyed and divided into various lots, and McCormick, who was sole commissioner, advertised the property for sale.   The property was offered for sale on the day appointed, in separate lots, sundry combinations of lots and as a whole, and the best price offered for the whole 190 acres was $7,000.   McCormick reported these facts and that the sale was fairly well attended. He further reported, however, that 180.61 acres of the property had not brought its value, and that with the consent of the former bidders he was willing to buy the 180.61 acres for $10,000 if the court would accept the offer and appoint another commissioner to make him a deed.   No objection was made, the offer was

accepted, and a commissioner was appointed to make him a deed, upon payment of the purchase money, by a decree entered in the cause on the — day of July, 1925. McCormick paid the $10,000 in cash, and a deed was made conveying the property to him on August 1, 1925, and he entered into possession.

· The decree of sale made no reservations as to the rights of tenants, or date of possession. Apparently, though it was not so expressly stated, the sale was to satisfy deeds of trust made prior to January 1, 192 4 and the decree was simply silent on the subject of tenants or possession. McCormick testified, and there is no evidence to the contrary, that at the time of the sale he announced that "the purchaser would get one-fourth of the crop, but would pay one-fourth of the fertilizer bill to put under the crop." There were a number of tenants on the land and they were under contract with Allen to pay him one-fourth of the crop as rent.

Subsequently, the residue of the Allen tract, to-wit, 328· acres, upon which Allen resided and upon which he also had tenants who raised crops in 1924, was sold and was purchased by the appellee, Terry.

[2] Allen, the landlord, was to furnish one-fourth of the fertilizer and was to receive one-fourth of the crop for rent. It appears that he had not furnished the tenants on the land in controversy anything in excess of one-fourth of the fertilizer, and hence could not give Terry a lien for any greater amount on the one-fourth of the crop coming to him. This McCormick offered to pay him. Terry claims a lien on one-fourth of all the crops raised on the entire 528 acres of land owned by Allen for the total advances made to Allen, regardless of the amount advanced to the tenants severally, and of the fact that he purchased 328 acres of the land on which some of the tenants riased crops.

[3] Terry bases his claim on section 6452 of the Code, but this section is to be read in connection with sections 6454 and 6455, all of which are quoted in the margin.*

Section 6452 applies only to advances made by a person "other than a landlord," whether the advances are made to a landlord or a tenant. It gives a lien on the crops, but does not fix the order of priority of the lien. The order of priority is fixed by section 6455, which expressly provides that the lien provided for in section 6452 "shall not affect in any manner" the rights of the landlord," *nor any lien existing at the time of making the agreement mentioned in said section* which is required by law to be recorded and shall have been admitted to record." (Italics supplied.)     Section 6454

*Section 6452. Lien on crops for advances to farmers; nature and agreement thereof; where recorded.—If any person, other than a landlord, make advances, either in money or supplies, or other things of value, to any one who is engaged in, or is about to engage in, the cultivation of the soil, the person so making such advances shall have a lien on the crops which may be made or seeded during the year upon the lands in or about the cultivation of which the advances so made have been, or were intended to be, expended, to the extent of such advances; but the persons making such advances shall not have the benefit of the lien, given in this section, unless there is an agreement, in writing, signed by both parties, in which there is specified the amount advanced, or a limit to be fixed beyond which any advances, made from time to time during the year, shall not go, and the said agreement be docketed in the office of the clerk of the county in which the said land so cultivated, or to be cultivated, lies in a well bound book to be known as "crop lien book," and alphabetically indexed therein, by said clerk, setting forth the date of the lien, a brief description of the land so cultivated, or to be cultivated, sufficient to locate the same if stated in the writing, the name of the lienor and the leinee, the amount advanced or the limit thereof, and the crops affected; and from the time such lien is docketed and indexed, it shall have the same force and effect as if recorded in the deed book, and shall be valid as to purchasers without notice from, and the creditors of, the parties or party obtaining such advances.

For said services the said clerk shall receive a fee of fifty cents.

All acts and parts of acts in conflict with this act are hereby repealed.

*Section 6454. Lien of landlords and farmers for advances to tenants and laborers; how enforced; priority of lien.—If any owner or occupier of land contract with any person to cultivate such land as his tenant for rent either in money or a share of the crop; or if any person engaged in the cultivation of land contract with any laborer thereon for a share of the crop as his wages; and such owner or occupier of the land, or such person engaged in the cultivation of land, shall make any advances in money, supplies, or other thing to such tenant or laborer, he shall have a lien to the extent of such advances

gives a lien to a landlord or occupant of land for advances made to a tenant or laborer, and declares that the lien so given *"shall be prior to all other liens on such crop,"* thus securing to the landlord his rent over all other claims or liens, including advances by third persons to the tenant or laborer on the land. No such provision is contained in sections 6454 or 6455.

Reading the three sections together, it would seem that the lien given by section 6452 was subordinate to prior deeds of trust which had been duly recorded. It may be conceded that it was competent for the legislature to provide that the lien for advances on crops seeded after the execution of a deed of trust on land should have priority over a prior recorded lien on the premises, yet it has not seen fit to do so. The party making the advances was chargeable with knowledge of the existence of the prior mortgage, and if he desired to make the advances, or intended to secure them, he

on all crops, or the share of such laborer in the crops, that are made or seeded on the said land during the year in which the advances are made, which shall be prior to all other liens on such crops or such portion thereof, or share therein; and he shall have the same remedy for the enforcement of such lien by distress when the claim is due, or by attachment when the claim is not yet payable, as is given a landlord for the recovery of rent under sections fifty-five hundred and twenty-two and sixty-four hundred and sixteen: Provided, that he or his agent shall, before suing out the distress warrant, make affidavit before the justice issuing the same to the amount of his claim, that it is then due and is for advances made under contract to a tenant cultivating his land, or a laborer working the same; and before suing out the attachment, make the like affidavit, and also at what time the claim will become payable, and that the debtor intends to remove, or is removing from such land, the said crops, or his portion thereof, or share therein, so that there will not be left enough to satisfy the claim. The person whose crops are so distrained or attached shall have all the rights and be entitled to all the remedies allowed a tenant against a distress or attachment for rent.

*Section 6455. Lien of landlords and other record liens not affected by lien given under section sixty-four hundred and fifty-two; nor exemption to poor debtors.*—The lien provided for in section sixty-four hundred and fifty-two, shall not affect in any manner the rights of the landlord to his proper share of rents, or his lien for rent or advances, or his right of distress, or attachment for the same, nor any lien existing at the time of making the agreement mentioned in said section, which is required by law to be recorded and shall have been admitted to record. Nor shall it affect the right of the party to whom the advances have been made, to claim such part of his crops as is exempt from levy or distress for rent."

had but to get the consent of the mortgagee that the crops should be removed before sale, or that as to crops he should have priority. There is no occasion for the land to remain idle. The method suggested will furnish ample protection, both to the tenant and to the party making the advances.

While it is not expressly so stated, it sufficiently appears from the evidence that this land was sold to satisfy liens secured by deeds of trust long before the lands were leased, and of which Allen had both constructive and actual notice, and there is no evidence that the beneficiaries ever consented to the leases.

In Ohio and Nebraska it is held that the annual crops growing on the land are to be regarded as personal property, and do not pass with the land to the purchaser at a judicial sale thereof. It is argued that unless this is so, lands are liable to remain idle and uncultivated, and that it is to the interest not only of the parties but of the public that the lands shall not thenceforth lie waste. *Houts* v. *Showalter*, 10 Ohio St. 125; *Aldrich* v. *Bank*, 64 Neb. 276, 89 N. W. 772, 57 L. R. A. 920, 97 Am. St. Rep. 643.

But a different view is taken by the courts of Missouri, Illinois, Iowa, Kansas, New Jersey, and probably other courts. The view taken by the latter courts is that tenants of the mortgagor can have no greater right as against a purchaser under a deed of trust than their landlord would have had, if he had been in possession, and that the question is not one between landlord and tenant, but one respecting the rights of a purchaser under a deed of trust against the maker of the deed as to the ownership of the crops. *Vogt* v. *Cunningham*, 50 Mo. App. 136; *Walton* v. *Fudge*, 63 Mo. App. 52; *Sugden* v. *Beasley*, 9 Ill. App. 71; *Downard* v. *Groff*, 40 Iowa 597; *Goodwin* v. *Smith*, 49 Kan. 351,

31 Pac. 153, 17 L. R. A. 284, 33 Am. St. Rep. 373; *Calvin* v. *Shimer* (N. J. Ch.), 15 Atl. 255.

[4] In 1 Minor's Real Property, section 50, it is said: "If the owner of the fee mortgages the land, and afterwards leases it to a tenant who plants crops, if the mortgage is foreclosed before harvest, the mortgagee's title is superior to that of the tenant (supposing the mortgage to have been recorded, or the tenant to have had notice thereof), and the tenant cannot claim emblements as against the mortgagee unless he has planted with the mortgagee's consent. The crops pass with the land to the mortgagee, whether planted by the mortgagor or his tenant."

This statement of the law is expressly approved by this court in *Armour* v. *Taylor*, 129 Va. 1, 105 S. E. 574.

In *Crews* v. *Pendleton*, 1 Leigh (28 Va.) 297, 305 (19 Am. Dec. 750), it is said: "With respect to the growing crops, the question does not seem to me to involve the general doctrine of emblements, but to depend on the particular contract of the parties. There can be no doubt that if one sell his land without any reserve, all the crops, not severed, will pass to the purchaser. They are a part of the subject, and enter into the price. The contract between the mortgagor and mortgagees is, in effect, this: 'I convey you my land, slaves, etc., as a security for the debts I owe you; I bind myself to pay you these debts by a given time, and if I fail, you may proceed, and get a decree for a sale of the subject; meantime, I remain in possession, use the slaves, and take the profits of the land; but, whenever you get a decree, you may immediately sell everything.' Under this agreement, if the mortgagor goes on and makes preparation for a crop, he does it with a full knowledge that the land with the crop is

subject to be sold, if the decree be obtained before he severs it. Nor does he lose anything by this; for the crop on the land enhances the price; if by this increase the debt be overpaid, he gets the surplus; if not, still the full value of his labor goes (as he had agreed it should go) to the payment of the debts secured by the mortgage."

In view of these authorities in this State, it is needless to review more in detail than we have done the cases cited from other jurisdictions. The question has become a rule of property in this State.

A great deal is said in the testimony about statements made by McCormick as to the right of Allen to lease the land for 1924, and the testimony on this subject is about as conflicting as it could well be, but it must be borne in mind that McCormick was then acting as counsel for Allen, under whom Terry claims, and it does not appear that McCormick was the trustee or the beneficiary under any of the deeds of trust sought to be enforced.

[5, 6] If this were all, McCormick, the purchaser of the land, would have taken the land free of any right or claim of the tenants. But McCormick testified that he announced at the sale that the purchaser would get one-fourth of the growing crops and be responsible for one-fourth of the fertilizer furnished the tenant. This fact is not disputed, though some of the witnesses state that they did not hear it, nor was the fact of the announcement mentioned in the report of the sale made by McCormick. In that report, however, McCormick made a cash offer of $10,000 for the 180.61 acres of land, and it must be assumed that he stood by the announcement made on the day of sale, that the rights of the tenants would be respected, and that he would receive the rents and pay one-fourth of the fertilizer

furnished his tenants, and this· he has repeatedly offered to do.    ·

This is not a contest for priority between different creditors of Allen, but between a purchaser at a judicial sale and one of Allen's creditors, and the question is, shall such purchaser get what he purchased, or shall he be required to take less or pay more? Under the decree of sale, which said nothing about possession, he would have been entitled, but for his announcement at the sale, to immediate possession upon payment of the $10,000, and to take the land as it stood, with the crops growing on it, and to have ousted the tenants of possession. He paid the money and obtained a deed August 1, 1924, and immediately claimed his rights as purchaser. The crop was then growing on the land and required considerable labor to cultivate it, cure it and prepare it for market, and this he arranged for with the tenants. The enhanced value of the land by reason of the growing crop was reflected in the price paid for the land, and if Terry was entitled to this enhancement, he should have asserted it against the purchase money, and not against the purchaser. The land was not sold subject to liens, but free of liens, and whatever liens existed were transferred from the lands to the purchase money. This was no hardship on Terry, but to require the purchaser to pay Terry's demands would be to hold him to a contract which he never made. He bought the land on the terms announced, and should be accorded the benefits of his contract.

In the instant case, all that McCormick claims is the one-fourth of the crop reserved by Allen as rent, and that he shall pay for one-fourth of the fertilizer advanced to Allen for the use of the tenants on the land purchased by him. He has agreed to respect the rights of the tenants, and to take only what Allen

would have gotten. This, at least, he is entitled to. He objects, however, to taking the landlord's one-fourth and applying it to advances made to Allen and used by other tenants on other lands, and the objection is a very reasonable one.

From these premises we concluded that the appellant, C. O. McCormick, is entitled to one-fourth of the crops raised on the lands purchased by him and is liable for one-fourth of the price of the fertilizer furnished to the tenants on that tract, and that the decree of the trial court taking a different view is erroneous. The decree of the trial court will, therefore, be reversed, and the case remanded to said court, with directions to conform its decree to the views hereinbefore expressed, and to dispose of the funds under its control accordingly. Appellant will be decreed his costs.

*Reversed and remanded.*