### MITCHELL v. WEAVER.
### Civ. A. No. 1509.

United States District Court
E. D. Virginia, Richmond Division.
May 15, 1953.

Charles B. Godwin, Jr., Suffolk, Va., and Buxton Midyette, Jackson, N. C., for plaintiff.

George R. Humrickhouse, Richmond, Va., for defendant.

STERLING HUTCHESON, Chief Judge.

The following statement is to be considered in lieu of findings of fact and conclusions of law.

Prior to the events here related W. C. Weaver died intestate in 1929, leaving surviving his widow and three children, including the defendant, P. F. Weaver. At the time of his death he was the owner of certain real estate in Greensville County, Virginia, which passed to his heirs at law. Subsequently there were various conveyances and at the time of the death of W. C. P. Weaver, one of the sons, in December 1950 the heirs at law of W. C. Weaver, including the infant children of W. C. P. Weaver, were the owners of 1,436 acres and continued as such owners until the transactions hereinafter related.

The defendant herein, Peter Francisco Weaver, was the owner of a separate parcel of land, consisting of 4 tracts aggregating approximately 818 acres, which was adjacent to the W. C. Weaver property.

From the time of the death of W. C. Weaver in 1929, through the year 1951, Peter Francisco Weaver operated and cultivated the W. C. Weaver farm and the farm owned by him individually as one unit. There was only one Production and Marketing Administration serial number assigned covering both farms; the peanut and cotton acreage allotments were assigned under the single farm number and in all other respects the two farms were regarded as one except that Peter F. Weaver under an agreement with the joint owners, in return for the use of the W. C. Weaver farm, paid the taxes and insurance and repaired the buildings and roads. Tenants on the property cultivated the land without respect to ownership boundaries as though one single tract. This agreement between P. F. Weaver and the other owners was renewed from year to year and was in effect at the time of the death of W. C. P. Weaver in December 1950, when his infant children became part owners of the W. C. Weaver tract, having been last renewed in August 1950 for the crop year of 1951.

During the summer of 1951 A. B. Williams entered into negotiations with P. F. Weaver to purchase the entire tract referred to as the P. F. Weaver farm or "Elmwood Plantation", containing approximately 2,383 acres consisting of the W. C. Weaver farm and the P. F. Weaver farm. As a result of the negotiations an agreement was entered into to sell the entire property to Williams for the sum of $105,000. Williams then approached N. E. Mitchell, of Littleton, North Carolina, the plaintiff herein, who agreed to buy the property at the price mentioned under an arrangement by which Mitchell would provide the purchase money and Williams and I. F. Rochelle would arrange for a resale of the property for a portion of the net profits derived from such resale. At this point the parties conferred with L. R. Slagle, Esquire, a practicing attorney at Emporia, Virginia, who informed them that due to the interest of the infant children of W. C. P. Weaver it would be necessary to institute proceedings in the Circuit Court of Greensville County in order to effect a sale of the W. C. Weaver portion of the land involved.

Thereupon arrangements were made to institute such proceedings but in the meantime an agreement was reached under which Mitchell purchased the P. F. Weaver farm for the price of $65,000, it being understood that $40,000 remaining of the $105,000 would be the portion of the entire purchase price allo-

cated to the W. C. Weaver tract. Included in the sale of the P. F. Weaver farm was certain personal property and on August 23, 1951, P. F. Weaver and wife executed a deed conveying to N. E. Mitchell the farm owned by him, including the personal property consisting in the main of farming equipment but reserving from the sale the growing crops, together with the right to use necessary equipment until the crops were removed and sold and also reserving a section of the warehouse for the storage of such crops. Weaver agreed to pay the taxes for the year 1951. As a part of the same transaction Mr. Slagle was retained by the heirs at law of W. C. Weaver to institute the necessary proceedings in the Circuit Court of Greensville County to effect the conveyance of the W. C. Weaver property for $40,000. Before the sale was concluded by order of court, Hyman Specter, acting as agent for another, submitted an offer of $55,000 for the W. C. Weaver property. Upon being advised of this offer Mitchell raised his bid of $40,000 to $55,100, which last offer was accepted and in due course a deed dated September 24, 1951, was executed by Mr. Slagle, as Special Commissioner, acting under order of the Court, conveying the tract of 1,436 acres to N. E. Mitchell, in consideration of the sum of $55,100.

Neither the bill in chancery filed in the Circuit Court of Greensville County, the order of reference, the decree ordering sale nor the deed conveying the W. C. Weaver property made any reference to the growing crops.

On November 23, 1951, Mr. Slagle, as counsel for Mr. Weaver, and the tenants cultivating the land were notified by counsel for Mitchell that Mitchell claimed title to the crops produced, unharvested and unsevered as of September 17, 1951.

On May 9, 1952, this suit was instituted by Norman E. Mitchell against Peter Francisco Weaver, seeking to obtain judgment in the amount of $17,084, the alleged value of the crops in controversy. There was a motion to dismiss for lack of jurisdiction upon the ground that the Circuit Court of Greensville County had jurisdiction, which motion was overruled. Subsequently an additional motion to dismiss was filed upon the ground that A. B. Williams, who is a citizen of Virginia, owned an interest in the subject matter. In response to that motion there was filed as plaintiff's Exhibit 1 an instrument executed by A. B. Williams dated January 14, 1952, and a similar instrument was filed as plaintiff's Exhibit 2, executed by I. F. Rochelle duly verified, releasing and discharging Mitchell from any obligation to Williams and Rochelle in connection with the transaction and Mr. Williams later testified that he had no interest whatever in the proceeding. Consequently that motion was overruled.

The sole issue before the Court is whether the unharvested and unsevered crops standing on the W. C. Weaver farm at the time of the transfer of title to Mitchell passed with the land.

Over the objection of counsel for the plaintiff parol evidence was introduced showing that the negotiations, first between Williams and Weaver and later between Mitchell and Weaver, concerned the sale and purchase of the entire tract of land known as "Elmwood Plantation", consisting of both the W. C. Weaver tract and the P. F. Weaver tract. It is obvious that during the negotiations the parties were concerned with the sale and purchase of the entire tract of land. When it was realized that the W. C. Weaver farm could not be sold without a court order that portion of the entire tract owned by P. F. Weaver and certain personal property owned by him were conveyed to Mitchell with a reservation of the crops and provision for the use in harvesting the crops of necessary farming implements which were being sold and the use of storage space in connection with those crops. It is to be borne in mind that the entire tract was being cultivated as a single unit. After this transfer was completed the parties proceeded with their preparations to consummate the sale of the remaining portion of the "Elmwood Plantation". In preparing the necessary court papers Mr.

Slagle made no mention of crops. In due course an order of reference was entered pursuant to which depositions were taken before a Commissioner in Chancery respecting the value of the real estate. It is significant that in the depositions of P. F. Weaver he testified that he had farmed this land along with his own for over twenty years and that his family rented or permitted him to farm it with the understanding that he would pay the taxes and insurance premiums, which including his interest amounted to around $2,000 a year, which he considered a fair rental. The report of the Commissioner makes no reference to crops and the decree confirming the sale and the deed executed pursuant thereto are silent so far as crops are concerned. But it is to be remembered that P. F. Weaver was the only party to the transaction (excepting sub-tenants) who had any interest in the crops, provided he fulfilled his bargain as to rent, and he had reserved the crops before the deed from the Commissioner was ever anticipated by the parties.

It is my conclusion that it was not contemplated by the parties that the crops would pass with the land.

This presents the legal issue involved as to whether the unsevered crops passed to the purchaser under the law or if the Court may consider parol evidence to show that the crops were considered as personalty.

It should be stated here that the plaintiff announced in open court that he claims only that portion of the crops which would pass to the defendant as rent and he disclaims any interest in that portion to which the sub-tenants are entitled. Some of the sub-tenants rented for one-half of the net proceeds and others rented for one-fourth.

■ While there are many decided cases dealing with the subject it is unquestionably the general rule in Virginia that growing crops pass with title to the real estate in the absence of an agreement to the contrary.

From an examination of the cases it is not altogether clear as to what con-

stitutes "an agreement to the contrary". Thus, in Crews v. Pendleton, 1 Leigh, Va., 297, the principle is recognized that if one sells land with no reservation the crops not severed will pass to the purchaser.

In McCormick v. Terry, 147 Va. 448, 137 S.E. 452, a tract of land was sold under decree of court and evidence was introduced to show that at the sale an announcement was made to the effect that the purchaser would recognize the rights of the tenants or croppers upon the land. In a contest between the purchaser and a creditor of the former owners the Court held that the crops passed with the land.

It is contended by the plaintiff that parol evidence is not admissible as it would violate the Parol Evidence Rule since the language of the deed is not uncertain or ambiguous. I agree with the contention that the language of the deed is clear and it contains no reference to the crops.

It would seem that the question presented does not concern the admissibility of evidence to vary the language of the deed, but the real inquiry is whether growing crops in Virginia must be considered realty or may such crops be considered personalty. If such crops must be considered realty, parol evidence is not admissible to show a reservation as this would violate the Statute of Frauds. Upon the other hand, if growing crops may be considered personalty and reserved by parol contract, it would follow that neither the Statute of Frauds nor the Parol Evidence Rule has application because the agreement reserving the crops would constitute a separate oral contract dealing with personalty independent of the deed.

■ Upon this point Ribble's Minor on Real Property, Second Edition, Vol. 1, Section 43, appears in point. That section reads as follows:

"If the vegetable products are the result of annual labor and cultivation, and especially if annually renewed and gathered, as cereals and

garden products, they are *fructus industriales*, and are for many purposes, considered as *personalty*, even before severance, while for other purposes they are regarded as part of the land from which they spring. Whether they are to be treated as realty or personalty depends in large measure upon the nature of the transaction in which the question arises. Upon a conveyance, sale, mortgage, or devise of the land upon which the crops are growing, they, like *fructus naturales*, pass therewith, in the absence of a stipulation to the contrary.

"On the other hand, if the owner of land sells the annual crops growing thereon, the sale is generally held to be a sale of personalty so that it is not within the Statute of Frauds. And this is true whether or not the crop has matured."

In footnote 8, under Section 43, we find:

"And by the weight of authority parol evidence will be admitted to show an agreement that crops were not to pass with the land where that evidence does not conflict with anything in the deed. Bjornson v. Rostad, 30 S.D. 40, 137 N.W. 567, Ann. Cas.1915A, 1151; Grabow v. Mc-Cracken, 23 Okl. 612, 102 P. 84, 23 L.R.A.,N.S., 1218. See note L.R.A. 1917C, 36."

The cases cited fully sustain the footnote.

It is to be noted that neither the cases cited nor does Mr. Minor say that the stipulation or reservation must be in writing. Upon the contrary, the Court in both Armour Fertilizer Works v. Taylor, 129 Va. 1, 105 S.E. 574, and McCormick v. Terry, 147 Va. 448, 137 S.E. 452, discusses parol evidence offered at the trial. In Walton v. Jordan, 65 N.C. 170, the following language is used:

"Annual crops which are regarded in law as *fructus industriales*, do not necessarily pass with the title of the land. For many purposes they are considered as personal property and they may be sold and transferred by parol, as they are not embraced in the statute of frauds. While they are growing they pass by presumption of law with the title of the land, but this presumption may be rebutted, even with parol evidence."

8 Michie's Jur., Volume 8, page 776 (Statute of Frauds) Section 14, states that:

"By the weight of authority growing crops of grain and vegetables are goods and chattels and not real estate and therefore do not come within the statute of frauds."

Again, in the case of Trout v. Norfolk & W. Ry. Co., 107 Va. 576, 59 S.E. 394, at page 397, 17 L.R.A.,N.S., 702, the Supreme Court of Appeals of Virginia, in discussing the question of an oral reservation of a right of way, said:

"It is not to be questioned that a separate oral agreement as to any matter on which a contract is silent, and which is not inconsistent with its terms, may be proven by parol, if under the circumstances of the particular case it may be inferred that the parties did not intend the written paper to be a complete and final statement of the whole of the transaction between them."

As late as 1950, in the case of Adams v. Seymour, 191 Va. 372, 61 S.E.2d 23, the Court of last resort of Virginia had before it a case in which one of the parties was claiming that timber did not pass under a deed on account of an oral agreement to the contrary. The Court in that case again discussed the question of establishing by oral reservation what would normally be treated as part of the realty, and after deciding that the evidence in that case failed to disclose an oral agreement between the parties with respect to timber, reaffirms the statement quoted above from the case of Trout v. Norfolk & W. Ry. Co., supra.

It is my conclusion that the plaintiff agreed to purchase the entire tract

known as "Elmwood Plantation" with certain personal property consisting largely of farming implements for a given price. It was agreed between the purchaser, Mitchell, and P. F. Weaver (the owner of one portion and the joint owner of the other portion of land and the sole owner of the personal property sold and of the crops), that the crops would be reserved. Weaver also reserved the right to use certain equipment and to store the harvested crops on the premises. In carrying this agreement into effect Weaver executed a deed conveying his portion of the real estate and the personal property, reserving the crops. It being necessary that court proceedings be had to transfer title to the other parcel of real estate, the conveyance of that title was delayed until appropriate proceedings could be had. Following the execution of the first deed and continuing for two months after the execution of the second deed Weaver exercised control over the crops and proceeded with the harvesting until November 23, when the greater portion of crops in that section had been severed. Then it was that Mitchell asserted claim to the crops, which had been reserved by parol agreement between him as the purchaser of the land and P. F. Weaver, the owner of the crops.

■ There was a stipulation between these parties concerning the crops although it was not reduced to writing with respect to those grown on the W. C. Weaver land. If the owner of land can sell annual crops as personalty, as stated by Mr. Minor, there is no reason why he should not be able to reserve crops as personalty. Mr. Minor in the footnote under Section 43, supra, states that by the weight of authority parol evidence will be admitted to show such an agreement where it does not conflict with anything in the deed. The Virginia cases support this view. There is no conflict with anything in the deed in the instant case.

■ It is therefore my conclusion that under the Virginia law, parol evidence is admissible to show an agreement that crops are not to pass with the land where that evidence does not conflict with anything in the deed. As stated, there does not appear to be any controlling Virginia case directly in point, but the rule, as stated by Mr. Minor, appears sound in reason and principle and it is surely the equitable solution of the issue here presented.

■ Adverting for a moment to the facts, the understanding of the parties is perhaps sufficiently shown by other facts without the introduction of parol testimony. When we consider the sale of P. F. Weaver's farming implements to Mitchell, the reservation of the crops in that deed and of the right to use the equipment and storage space, the well-known fact that the two tracts were being cultivated as one by Weaver, the depositions of Weaver concerning his use of the land and his agreement to pay taxes on the W. C. Weaver property for the full year of 1951, and the subsequent conduct of Mitchell in acquiescing in the control of the crops for two months after completion of the transaction and during the season of the year when crops in that section are being harvested, it is clear what was the intention of the parties.

■ There is another ground upon which the plaintiff should be denied relief.

Section 8-701 of the Code of Virginia reads as follows:

"Any person who, before the partition or sale, was lessee of any of the lands divided or sold, shall hold the same of him to whom such land is allotted or sold on the same terms on which by his lease he held it before the partition."

It is contended that since Weaver was a part owner of the W. C. Weaver tract the statute does not apply to him. With this contention I am unable to agree. Clark v. Harry, 182 Va. 410, 29 S.E.2d 231, 232, discusses in some detail the status of the tenant of real estate. Under the facts here P. F. Weaver was the tenant or lessee of the W. C. Weaver tract. It is true that he was the owner of an undivided portion therein but I

can conceive of no reason why such ownership should deprive him of the rights given a tenant or lessee under the statute. It is a strained construction of the law to contend that he cannot occupy the dual position of joint owner and tenant or lessee with all the rights granted a lessee under the law. This is particularly true when it is considered that Mitchell was fully aware of the occupancy of the land by Weaver and his sole ownership as against the other co-owners of the growing crops.

The plaintiff relies upon Phillips v. Dulany, 114 Va. 681, 77 S.E. 449, in support of his contention that Section 8–701 of the Code has no application. As I read that case, so far as the rights of the tenant are concerned it merely holds that a lease by some of the tenants of jointly owned property will not bind the others nor will it prevent partition and has no application to the case at bar.

Judgment will be entered for the defendant with costs.